# THE COMMERCIAL NATIONAL BANK

*v.*

## WILLIAM PROCTOR *et al.*

*Filed at Ottawa May 14, 1881.*

1. PRACTICE—*reviewing facts found by Appellate Court.* By section 89 of the Practice act, as amended in 1877, this court is prohibited from determining controverted questions of fact, except in a few classes of cases. Where the Appellate Court affirms a judgment, it will be presumed it found the facts the same as did the trial court. So, in an action by the payee, upon a check, against the bank upon which it was drawn, this court can only look to the evidence to see whether the ruling upon the instructions was proper, or to see whether the facts found by the Appellate Court warranted the judgment, but not to see whether the evidence warranted the finding of the facts.

2. PARTNERSHIP—*right to change a deposit in the name of one partner to the credit of the firm.* Where one of two partners, carrying on business in his own name, deposits moneys of the firm in his own name in bank, such funds belonging to the firm the other partner will have the right to change the account during the life of the partner in whose name the deposit was made, and place it to the credit of the firm account, and, after his death, to check it out as surviving partner. But if the same was the private means of the partner so depositing, the other will have no power to control it or check it out during the life of the depositor, or after his death.

3. SAME—*right of surviving partner to use firm name.* A surviving partner has the right to use the firm name in which to transact his business. A check drawn on a bank by him, either in the firm name or in his own name as surviving partner, when paid will protect the bank.

4. SAME—*succeeding to business of a partner.* Where a person engaged as an agent in the sale of manufactured articles on a commission, forms a partnership with another, and the firm continues the business, it will be a continuance of the agency, not only to sell, but also to collect for articles previously sold, for the principal. And such money, when collected, over and above the commissions allowed, belongs to the principal or original owner, and does not become the property of the agents selling.

5. BANK—*right to retain deposit for debt of depositor.* A bank has no power to retain the money of a depositor to meet a note, the payment of which the depositor has guaranteed, which is not due at the time.

6. INSTRUCTION—*assuming the existence of a partnership, erroneous.* In a suit against a bank on a check given by a surviving partner, involving the existence of a partnership, and the question whether the fund upon which

the check was drawn belonged to the firm, instructions which assume that there was a partnership, are calculated to mislead the jury, and are erroneous.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Messrs. SLEEPER & WHITON, for the appellant:

There is no evidence that Marsh ever knew or assented to the act of Lilly in assuming to act as his attorney in signing the check to transfer the account, and such authority can not be presumed.

Giving the utmost possible credit to the statements of Lilly, they indicate only a purpose, or possible agreement, to enter into partnership, and not a consummated partnership. *Wilson* v. *Campbell*, 5 Gilm. 383; *Doyle* v. *Bailey*, 75 Ill. 418; *Gregory* v. *Martin*, 78 id. 38.

But if we were to concede that a partnership was really formed between Marsh and Lilly on July 29, when the transfer of account was made, and that Marsh had authorized Lilly to secure a transfer of the account in the bank, to form a basis for a co-partnership business, of which there is no evidence, and that the amount transferred became a partnership fund, then what was the situation when Marsh died? He was entitled to the firm assets to pay the firm debts, but not the private debts of Marsh, which were for his administrator. *Nelson* v. *Hayner*, 66 Ill. 490; *Remick* v. *Emig*, 42 id. 342.

There is some confusion, at times, in the application of the rule that a bank can not hold its customer's deposit to meet his maturing liability. It applies generally *inter vivos*, but when a depositor dies, a new rule comes in: that his deposit is assets, to apply in course of administration upon his debts, whether due at the time of his death or not; and knowing that the fund in controversy was really Marsh's money, the

bank had a right to invoke the rule which protects all creditors of a decedent, whether their respective claims are due or not. *Ford* v. *Thornton,* 3 Leigh, 659; *Knocht* v. *United States Savings Inst.* 2 Mo. App. 563; *Bank* v. *Armstrong,* 4 Dev. L. 519; *Matter of Franklin Bank,* 19 Am. Decis. 422.

Messrs. SWETT, BATES & HASKELL, for the appellees:

The check of a depositor upon his banker operates as a transfer of so much of the deposit as the check calls for. *Munn* v. *Birch et al.* 25 Ill. 35.

The surviving partner has the right to pay the partnership debts, and dispose of the effects of the concern. *Peters* v. *Davis,* 7 Mass. 256; *Bopp* v. *Fox,* 63 Ill. 540.

It is a just and uniform rule, that the partnership property shall be applied to the partnership debts, to the exclusion of the creditors of the individual members of the firm. *Adams* v. *Sturgis,* 55 Ill. 472; *People* v. *White,* 11 id. 350; *Bopp* v. *Fox, supra.*

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellees sued the bank on a check drawn by one Lilly in the name of V. A. Marsh & Co., against funds standing to the credit of a firm that it is claimed existed from the 13th of July, 1878, till the 4th of the following August, between V. A. Marsh and C. W. Lilly. The latter drew the draft, claiming the right to do so as surviving partner of the firm.

It is not disputed that Marsh, prior to the 13th of July, 1878, was the agent of appellees, who were manufacturers of soap, for the sale of their goods on commission; nor is it disputed that he had on his account with the bank a credit of over $1100 on the 29th day of that month, or that he was then sick, or that Lilly, on that day, had the bank to close that account and open a new one, in the name of V. A. Marsh & Co., and by drawing a check on the bank for the amount of the credit on Marsh's account, signed in his name

by Lilly, as agent, transferred the credit to the new account then opened.

It is not contested that Lilly made deposits with the bank to the credit of V. A. Marsh & Co., and drew therefrom moneys on checks drawn in the name of V. A. Marsh & Co., after the death of Marsh, which occurred on the 4th of August, until the check in controversy was drawn in the same name, on the 12th of that month, and payment was refused; nor is it disputed that there was standing, a credit on the account, a sum sufficient to meet the check in controversy. It is, however, denied by appellant, that Lilly had any authority to transfer the money credited to Marsh's account to the account of V. A. Marsh & Co.  It is also claimed that the money thus credited belonged to him individually, and on his death became assets of his estate, and as he died insolvent, the bank had a right to participate in its distribution for the amount of a $1000 note on Strutz & Co., which Marsh had negotiated to the bank and guaranteed its payment, but which had proved worthless.  The bank denies that Marsh and Lilly ever formed a partnership, and even if the money belonged to the business, Lilly had no power to control it as a partner.

The parties have argued the weight of evidence on these controverted facts.  We are absolutely prohibited, by the 89th section of the amended Practice act of 1877, Sess. Laws, p. 153, from determining controverted facts in this class of cases.  We have repeatedly held, that where the Appellate Court affirms a judgment of this character, we must presume it found the facts as did the trial court.  We can only look into the evidence to see whether the trial court instructed the jury properly on the evidence.  That is a question of law which we are required to determine, or to see whether the facts found by the Appellate Court warranted the judgment, but not to see whether the evidence warranted the finding of the facts.  We shall, therefore, proceed to determine whether

the errors are well assigned on the giving, refusing and modifying of the instructions given to the jury on the trial.

Were the jury properly instructed in the case? It is objected that the instructions assume that there was a partnership existing between V. A. Marsh and C. W. Lilly. That was one of the issues being tried by the jury. If there was no partnership, then Lilly had no legal right to transfer the amount standing to the credit of V. A. Marsh to any other account, by which he could control the money. If, however, there was a partnership, and the business was done from the 13th till the 29th day of July in the name of Marsh & Co., and the money standing to Marsh's credit had been received by the firm during that time, and was funds received in the course of its business, then Lilly, as a partner, had a right to change the account during Marsh's life, and place it to the credit of the firm, and to check it out as surviving partner. If it was Marsh's private means, then Lilly had no power to control it, and no power to check it out during the life or after the death of Marsh. If, however, there was a partnership, and this fund belonged to the firm, then it was under the control of the firm during its existence, and of Lilly after its dissolution.

These were both important questions in the decision of the case, and should have been clearly presented to the jury. The instructions seem, throughout, to assume that there was a partnership, and that was well calculated to mislead, and probably did mislead, the jury on that issue. In this they were erroneous. What we have said applies to appellees' first and third instructions, and to the modification of appellant's second instruction.

It follows, from what has been said, that appellant's fifth instruction should have been given. If, as therein stated, the money belonged to Marsh, then, even if there was a firm, Lilly, as surviving partner, had no right to apply it to the payment of a debt owing by the firm.

Appellant's first instruction was properly refused. Lilly had a right to use the name of V. A. Marsh & Co. in which to transact his business, and the bank had recognized the right by honoring his previous checks thus drawn. On paying such checks, they were protected. It did not matter to them whether he drew in the firm name, or in his own name as surviving partner. If there had been a firm, and the fund belonged to it, he had power to control it, as the title to it had vested in him by the dissolution of the partnership.

The modification of appellant's second instruction was wrong, so far as it assumed there was a late firm.

We find no evidence on which to base appellant's third instruction. It seems to be based on a mere suspicion, not borne out by the record.

The fourth was properly modified, as there was evidence tending to prove,—and it was not contradicted,—that the money standing to Marsh's credit, and which was transferred to the new account, was received for soap sold for appellees; and if there was a partnership, it was a continuance of the agency, not only to sell, but to collect for soap previously sold for appellees. It, by the formation of a partnership, became a part of the business, and when collected would be funds under the control of the firm, unless excluded by the agreement in forming the partnership. This was unlike a partnership employing capital in buying and selling commodities, manufacturing wares, etc., and the employment of capital by the partners. It was a partnership in a commission business for the sale of articles of another person for a per cent on the sales. No capital was used by the commission-man, and when the articles were sold and the money collected, it belonged to the owner of the goods. The commission-men had no interest whatever in the fund, beyond their commissions. It was deposited in the bank for safe keeping, and was checked for as a means of transmitting the money to the owners, in Cincinnati. If the creditors of Marsh have any right to participate in this fund, it is alone by reason of

a technical rule of law, but not from principles of natural justice.

The bank had no power to retain the money to meet the note of Strutz, not then due, and claimed to have been guaranteed by Marsh, as the·bank seems to have claimed the right to do.    But that ground is not urged on the argument in this court.

For the errors in giving, refusing and modifying the instructions, the judgment of the Appellate Court is reversed, and the cause remanded.

*Judgment reversed.*