EASTERN MILLING & EXPORT CO. v. EASTERN MILLING & EXPORT
CO. OF PENNSYLVANIA.

(Circuit Court, E. D. Pennsylvania.   July 14, 1906.)

No. 37.

1. ASSIGNMENTS—CHECK AS EQUITABLE ASSIGNMENT—PRIORITY—RECEIVERS.

The giving of a check on a bank in the ordinary form does not constitute an equitable assignment pro tanto of an indebtedness owing by the bank to the drawer, nor does the fact that the check was presented, where it was not paid nor accepted, entitle the holder to priority of payment, on the drawer's subsequent insolvency, from a fund due from the bank or collected by a receiver.

[Ed. Note.—For cases in point, see vol. 4, Cent. Dig. Assignments, §§ 85–98.]

2. BANKS AND BANKING—RIGHT OF BANK TO APPROPRIATE DEPOSIT—EFFECT OF RECEIVERSHIP.

The right given to a bank by a contract with a depositing and borrowing corporation to declare any notes of the corporation held by the bank due in case the corporation became insolvent, and to apply thereon any sum then on deposit to the corporation's credit, cannot be exercised after a receiver has been appointed for the corporation, since title to the deposit passed to him at once on his appointment.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, §§ 353–374.]

Rule on Receiver to Pay over Money.
See 125 Fed. 143.

H. Gordon McCouch, for Corn Exchange Nat. Bank.
Stacy B. Lloyd, for receiver.

HOLLAND, District Judge.  This matter is brought before the court on a petition presented on behalf of the Corn Exchange Bank, to which an answer was filed by the receiver of the Eastern Milling & Export Company of Pennsylvania, and a stipulation of counsel as to certain facts, which are admitted by the parties, and which do not appear in the petition and answer.  They are as follows:  The milling company became a debtor to the bank on a promissory note of $4,500, dated May 11, 1903, payable at the expiration of 60 days, and it came due July 11th, the same year.  Nine of the first mortgage bonds, for $1,000 each, of the company, were deposited with the bank as collateral security for the note.  The milling company was also a depositor with the bank, and had filed a statement of its assets and liabilities in which the milling company agreed that:

"In consideration of granting any credit by the said bank, the undersigned [the milling company] agrees that, in case of failure or insolvency on the part of the undersigned, * * * all or any of the claims or demands against the undersigned held by said bank shall at the option thereof immediately become due and payable, and it is hereby understood and agreed that all moneys, funds, stocks, bonds, notes, and other property in the hands of the said bank belonging to the undersigned may at all times at the option of the bank be held and appropriated by the said bank to the payment of all notes, indorsements, obligations, or indebtedness in any form, matured or unmatured, made by the undersigned, which the said bank may hold.

Further that the exercise of or omission to exercise such option or options in any instance shall not waive or affect any other or subsequent right to exercise the same."

On July 3, 1903, the milling company had credit with the bank as a depositor for the sum of $554.54, some of which was for collection on out of town checks. A receiver was appointed for the milling company on July 6, 1903, because of its insolvency, and on May 11th the $4,500 note made by the milling company to the bank fell due, and on February 9, 1904, the bank appropriated the deposit on account of the note. Prior to the appointment of the receiver and on the 3d day of July, 1903, the milling company drew a check to Charles H. Burr for $500, which was presented the same day, but payment refused on the ground that while the milling company's bank book showed a credit of more than enough to meet the check, the credit was made up of certain checks that day deposited by the milling company with the bank, some of which were out of town checks and had not then been collected, and the agreement with the bank and all depositors made the bank simply a collateral in all out of town checks until they received the money in their possession. Mr. Burr did not present his check again for payment before the receiver had been appointed. Subsequently a distribution of the assets of the milling company was made, and there was awarded to the bank the sum of $2,935.35 on the nine bonds held by the bank as collateral to the note; this being a dividend of 32.615 per cent. The receiver offered to pay this amount to the bank, less the deposit which he claims belongs to him as receiver for the milling company. The bank claims the right, under the provisions of its agreement above stated, to appropriate the deposit on account of the note which matured subsequent to the appointment of the receiver, and Mr. Burr, the holder of the check, insists that $500 of the deposit should be paid to him.

The latter's claim, we think, is clearly ruled out by the decisions of the Supreme Court in Bank of Republic v. Millard, 77 U. S., 152, 19 L. Ed. 897, and Fourth Street Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855. In the first case, it is held that as between a check holder and a bank upon which the check is drawn, unless it be accepted by the bank, an action cannot be maintained by the holder against the bank; and, in the latter, the court held that a check, drawn in the ordinary form, does not, as between the maker and payee, constitute an equitable assignment pro tanto of an indebtedness owing by the bank upon which the check has been drawn, and that the mere giving and receipt of the check does not entitle the holder to priority over general creditors in a fund received from such bank by an assignee under a general assignment made by the debtor for the benefit of creditors, and the contention that the check was presented for payment to the bank prior to the assignment does not change the rights of the holder thereof is fully borne out by the opinion of Justice White in Bank v. Yardley, supra.

As between the milling company and the bank, the bank's note having matured after the insolvency of the milling company and the ap-

pointment of a receiver, the latter would be entitled to recover the deposit, because at the time the receiver was appointed all property, including the deposit, passed to him as trustee for the creditors, and the bank could not credit the deposit on account of the note it held against the milling company, which matured on the 11th of July, five days after the deposit had passed to the receiver, for the reason that at the time the receiver was appointed the bank had no lien on the deposit that would have interfered with the rights of the milling company to draw the same and that by virtue of the appointment of a receiver the right to do so passed to him in trust for the creditors. Chipman & Holt v. Ninth National Bank, 120 Pa. 86, 13 Atl. 707, and cases therein cited. But it is contended that by virtue of the agreement the milling company was authorized to appropriate the deposit on account of the note as above stated. It is true, under the agreement, the bank was authorized as between the depositor and itself to apply the deposit on account of any note it might hold against the milling company in case of insolvency of the latter. The bank, under the agreement, for the reasons stated, held an option or privilege to declare any note due held by it against the milling company and to appropriate any deposit it might hold in payment thereof; but, in this case, the bank did not exercise this option before the appointment of the receiver, and the deposit passed to him as trustee for the creditors upon his appointment.

The relations between the milling company and the bank up to the time of the appointment of the receiver were identical with those existing in the case of Chipman & Holt v. Ninth National Bank, supra, with the exception that the bank held a power of attorney authorizing it, at its option, to declare the note due and payable and to appropriate the deposit as part payment. Having failed to exercise this power prior to the appointment of a receiver, its right to do so no longer exists, and the receiver is entitled to the fund.

The prayer of the petitioner for an order upon the receiver, directing him to pay over the said dividend of $2,935.35, without deduction or abatement, is therefore refused.