CORN EXCH. NAT. BANK v. LOCHER et al.

(Circuit Court of Appeals, Third Circuit. February 13, 1907.)

No. 484.

BANKS AND BANKING—RIGHT TO APPROPRIATE DEPOSIT—EFFECT OF RECEIVERSHIP.

    The right given to a bank by a contract with a depositing and borrowing corporation to declare any indebtedness of the corporation due and payable at once in case of its insolvency and to apply thereon any money, credits, or other property of the corporation then in the hands of the bank does not create a lien on any such funds or credits, but merely gives the bank an option which cannot be exercised after a receiver has been appointed for the corporation in insolvency proceedings.

    Buffington, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 146 Fed. 761.

H. Gordon McCouch, for appellant.

Malcolm Lloyd, Jr., for appellees.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

DALLAS, Circuit Judge. The Eastern Milling & Export Company of Pennsylvania executed and delivered to the Corn Exchange National Bank a certain paper dated January 22, 1903, in which there was a clause as follows:

"In consideration of granting any credit by said bank, the undersigned agree that in case of failure or insolvency on the part of the undersigned, or in the event of it appearing at any time that any of the following representations are

untrue, or in case of the occurrence of such change as aforesaid, or in failure to notify such change as above agreed, all or any of the claims or demands against the undersigned held by said bank shall, at the option thereof, immediately become due and payable; and it is hereby understood and agreed that all moneys, funds, stocks, bonds, notes, and other property in the hands of the said bank, belonging to the undersigned, may at all times, at the option of the bank, be held and appropriated by said bank to the payment of all notes, indorsements, obligations, or indebtedness in any form, matured or unmatured, made by the undersigned, which the said bank may hold. Further, that the exercise of or omission to exercise such option or options in any instance shall not waive or affect any other or subsequent right to exercise the same."

On May 11, 1903, the milling company became debtor to the bank upon a promissory note at 60 days for $4,500, with which nine $1,000-mortgage bonds of the milling company were pledged as collateral. On July 3, 1903, the milling company, then having credit with the bank as a depositor for $554.54, issued its check for $500, which was presented upon the same day and payment thereof was refused, but not upon the ground that the bank had made the appropriation of the milling company's balance which it now claims it had a right to make. On July 6, 1903, a receiver was appointed for the milling company, because of its insolvency, and on July 11, 1903, its $4,500-note fell due; but the books of the bank continued to show a deposit credit to the milling company of $554.54, down to February 9, 1904, when a charge of that amount was entered against its deposit account, and a corresponding credit was entered on account of its note. On the milling company bonds held by the bank as collateral a dividend of $2,-935.35 was declared, and thereupon the bank presented its petition to the court below, praying an order upon the receivers to pay said dividend to it, "without deduction or abatement whatsoever"; but the learned judge directed the receivers to retain out of the said $2,935.35 "the sum on deposit with the said bank, to wit, $554.54, with interest," and the question now for determination is whether this direction was erroneous.

The position of the bank rests wholly upon that part of the writing of January 22, 1903, which has been quoted; its contention being that by virtue thereof "whatever balance at any time stood to the credit of the milling company was pledged as collateral security for the payment of any of its notes, matured or unmatured, which were held by the bank, and in the event of insolvency there was reserved to the bank, not only the right to at once declare unmatured paper presently due and payable and to appropriate any balance to the credit of the maker toward the payment of the same, but there was also reserved to it the right to hold any balances then to the credit of the maker of the note until the maturity of the note, and then apply the same in payment thereof." That this interpretation of the language relied upon by the appellant is not an unreasonable one may be conceded; but it does not follow that the instrument in which it was used should be given the effect which we are asked to give to it. That instrument seems to have been—as indeed it was designated—a "standard form" of "financial statement" made "for the purpose of procuring and establishing credit from time to time." It was made nearly four months prior to the making of the note for $4,500, and not with especial reference to it.

It did not create a lien upon any fund or credit of the milling company, but merely conferred authority on the bank, at its option, to at any time appropriate the moneys of the milling company in the hands of the bank to the payment of any notes of the former, which at the time being might be held by the latter. When, therefore, the receivers were appointed there was neither lien upon, nor appropriation of, the sum of $554.54 in question, for the requisite option had not been previously exercised; and it could not be effectively exercised thereafter, because the rights of others had then attached, which, in the absence of a pre-existent lien, could not be adversely affected. Consequently, the entries that were made in the books of the bank several months after the appointment of the receiver were wholly nugatory and unavailing.

The decree of the Circuit Court is affirmed.

BUFFINGTON, Circuit Judge, dissents.