## WRIGHT v. SEABOARD STEEL & MANGANESE CORPORATION.

(Circuit Court of Appeals, Second Circuit. February 23, 1921.)

### No. 174.

1. **Banks and banking ⚫134(2)—Deposit cannot be applied on unmatured debt.**

   As a general rule a bank has no right to apply a deposit to a debt of the depositor until such debt matures.

2. **Banks and banking ⚫136—Bills and notes ⚫136—Additional loan sufficient consideration for agreement accelerating maturity and giving lien on deposit.**

   An additional loan by a bank to a debtor was a sufficient consideration for the debtor's agreement, giving the bank a lien on any account of the debtor with the bank for payment of the loan and all other notes and claims, and providing that in case of insolvency, or upon the occurrence of anything evidencing insolvency, the note for the loan and all other claims and liabilities should be immediately due and payable.

3. **Bills and notes ⚫129(1)—Provision accelerating maturity in cases of "insolvency" construed.**

   A provision in a note that in the event of insolvency, or on the occurrence of anything evidencing insolvency, the note and all other claims and liabilities should be immediately due and payable, used the term "insolvency" in its usual sense of inability to pay debts.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insolvency—Insolvent.]

4. **Bills and notes ⚫129(1)—Bill and answer in suit for receivership held to mature notes.**

   Under a provision in a note that, on the occurrence of anything evidencing insolvency, the note and all other notes, claims, and liabilities should be due and payable, a bill of complaint alleging insolvency, and an answer admitting insolvency, in a suit against the debtor corporation for the appointment of a receiver, were sufficient to mature the notes.

5. **Banks and banking ⚫136—Corporations ⚫559(5)—Right of bank to apply deposit on note matured by insolvency of corporation not affected by appointment of receiver.**

   Where a corporation's note to a bank gave the bank a lien on any deposit of the corporation with the bank for the payment of the note and

---

all other debts owned by the bank against the corporation, and provided that they should become due and payable in case of insolvency or the occurrence of anything evidencing insolvency, the lien was not displaced or affected by the appointment of a receiver for the corporation, and the bank could apply a deposit on a note matured by the maker's insolvency, notwithstanding the receiver's appointment.

6. **Receivers** ⬤➙**77 (1)—Appointment does not disturb liens or rights of third persons.**

The appointment of a receiver does not disturb pre-existing liens on the property, or vested rights or interests of third persons therein, whether originating in contract or arising by operation of law.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Philip E. Wright against the Seaboard Steel & Manganese Corporation, in which Stanton S. Freeman was appointed receiver of the defendant. From a judgment denying the receiver's motion for an order requiring the Merchants' National Bank of the City of New York to turn over certain moneys, the receiver appeals. Affirmed.

Baker & Obermeier, of New York City (Irving Lachenbruch, of New York City, of counsel), for appellant.

Williams E. Sims, of New York City, for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. This is an appeal from an order denying motion of the receiver of the Seaboard Steel & Manganese Corporation, hereafter referred to as the Seaboard, for an order requiring the Merchants' National Bank of the City of New York, hereafter referred to as the bank, to turn over and pay to him the sum of $5,324.83 alleged to be unlawfully withheld by it.

It appears that the petition of the receiver sets up his appointment on August 13, 1919, and alleges that on December 30, 1918, the Merchants' National Bank loaned defendant $200,000 on its promissory note, secured by the deposit of certain ores with trustees; that the amount of said note was from time to time reduced by the sale of portions of the pledged ore, and was subsequently renewed at a reduced amount, the new note coming due on September 29, 1919; that on the date of the receiver's appointment, August 13, 1919, defendant had on deposit with the bank $5,324.83, which sum on August 15, 1919, and after due notice of the receiver's appointment and service of the order upon it, the bank applied in part payment of the note.

The answer of the Merchants' Bank in general admits the allegations of the petition, but denies, inter alia, that the note had not become due and payable on August 13, 1919. In addition, three separate defenses are interposed. The first defense alleges a loan of $18,000 made by the bank to defendant on July 21, 1919, secured by defendant's note for that amount of even date and payable in 90 days, that the said note by its terms gave the bank a lien upon all moneys of the defendant deposited with it for the payment of all claims of the bank against defendant then existing or thereafter arising, and further gave the bank the right at its option to apply such deposits to the extin-

guishment of any or all notes or other obligations, and expressly provided that in the event of insolvency or on the occurrence of anything evidencing the insolvency of defendant, all notes, claims, and liabilities should become and be immediately due and payable without notice or demand of payment; that at the time the $18,000 note was executed the bank was and still is the holder of the note described in the petition; that there is still due thereon an amount in excess of $5,324.83; that on August 12, 1919, defendant was and ever since has been insolvent; that such insolvency is alleged in the bill of complaint and admitted in the answer; and that on August 12, 1919, defendant had on deposit with the bank $5,324.83, which sum on August 15, 1919, the bank applied upon the note described in the petition. The second defense is similar to the first, except that the note is counted on as an agreement, and the third defense is similar to the second, except that the allegations regarding defendant's insolvency are omitted.

The court below held that by the terms of the note of $18,000 executed on July 21, 1919, that note together with all notes, claims, and liabilities held by the bank against the debtor became immediately due and payable, and that the bank had a lien upon the balance of any account of the debtor, and had the right to apply the same upon account of any of the notes. It accordingly denied the motion of the receiver that the bank be required to turn over the sum of $5,324.83, which it was claimed the bank had appropriated to its own use in violation of the order made by the court when the receiver was appointed and which enjoined all persons from doing any act whatsoever to interfere in any way with the possession and management by the receiver of the property assets and effects of the Seaboard.

The note for $18,000 dated July 21, 1919, by its terms among other things provided that the bank should thereby be given a lien upon the balance of any account of the Seaboard with the bank, for the payment of the note and of all other claims or liabilities owned by the bank against said corporation which then existed or which thereafter might exist or arise in the bank's favor; that the bank or its president or cashier might at any time at its or his option apply to the extinguishment of the note and of any or all other notes, claims, or liabilities of or against said corporation owned by the bank any moneys on deposit to the credit of said corporation with the bank; and that in the event of insolvency, or on the occurrence of anything evidencing the insolvency of the corporation all such notes, claims, or liabilities should become and be immediately due and payable without notice or demand of payment.

At the time that note was executed and at all times thereafter the bank has been the owner of that note, and there is now due and owing thereon an amount largely in excess of $5,324.83. The receiver was appointed late in the day on August 13, 1919. On the following day, August 14, 1919, the bank was served with a copy of the order appointing him including the injunction provisions. On the day of the receiver's appointment neither the note dated June 30, 1919, for $176,-325.62, nor the note dated July 21, 1919, for $18,000 had matured. On August 15, 1919, the bank applied the balance in its hands to the

credit of the Seaboard, amounting to $5,324.83 for payment on the note dated on June 30, 1919, which by its terms was to mature on September 29, 1919.

[1] It is claimed that no right of offset existed in the bank until the note matured. This court in Fifth National Bank of City of New York v. Lyttle, 250 Fed. 361, 162 C. C. A. 431, held that a bank has no lien on the general deposit of a customer for an unmatured indebtedness to it. The doctrine therein announced is clearly supported by the authorities. There can be no doubt that as a general rule a bank has no right to apply a deposit to a debt of the depositor until such debt matures. Birmingham First National Bank v. Minge, 186 Ala. 405, 64 South. 957; Richards v. La Tourette, 119 N. Y. 54, 23 N. E. 531; Oatman v. Batavian Bank, 77 Wis. 501, 46 N. W. 881, 20 Am. St. Rep. 136; Commercial National Bank v. Proctor, 98 Ill. 558; Hodgin v. People's National Bank, 124 N. C. 540, 32 S. E. 887; Ellis v. Woonsocket First National Bank, 22 R. I. 565, 48 Atl. 936.

But the facts in the Lyttle Case are plainly distinguishable from the facts in the case now before the court. In the Lyttle Case the notes contained no express agreement for the acceleration of the maturity of obligations in the event of insolvency, or on the occurrence of anything evidencing insolvency. In the case now before us for determination such an express agreement was made. Whether the court can recognize this difference in the facts, and give effect to the agreement the parties made, is the question which must be determined.

In Corn Exchange National Bank v. Locher, 151 Fed. 764, 81 C. C. A. 388, the Circuit Court of Appeals in the Third Circuit had a somewhat similar question before it. The Eastern Milling & Exporting Company had executed and delivered to the Corn Exchange National Bank a paper, in which it agreed that in case of its insolvency all or any claims held by the bank against it should at the bank's option immediately become due and payable, and that all moneys, funds, stocks, bonds, notes, and other property in the hands of the bank belonging to it might at the bank's option be appropriated to the payment of the indebtedness matured or unmatured. In that case a receiver for the milling company was appointed because of its insolvency. The court below held that the right given to the bank by this agreement made with it by the depositing corporation could not be exercised after a receiver had been appointed for the corporation, since title to the deposit passed to him at once on his appointment. The theory was, at the time of the receiver's appointment, the bank had no lien on the deposit that would have interfered with the rights of the depositor to draw the same, and that by virtue of the appointment of the receiver the right to do so passed to him in trust for the creditors. The Circuit Court of Appeals affirmed the court below, holding that the agreement did not create a lien, but gave the bank an option, which could not be exercised after the appointment of the receiver because the rights of others had then attached.

In Beckwith v. Union Bank, 9 N. Y. 211, an insolvent firm having money on deposit in bank made a general assignment for the benefit of creditors. Shortly thereafter, but before notice of the assignment,

a bill against the firm held by the bank, exceeding the sum on deposit, matured and was charged by the bank to the account of the firm. In a suit brought by the assignee for the deposit, it was held that, as against him the bank had no right to apply the money on deposit to the payment of the dishonored bill, notwithstanding the fact that it was the holder of the bill at the date of the assignment. The case was decided upon the theory that at the time of the assignment the bank had no lien on the deposit that would have interfered with the right of the assignors to draw the same, and that by virtue of the assignment their right to do so passed to the assignee in trust for the creditors. The same doctrine was declared in Chipman v. Ninth National Bank, 120 Pa. 86, 13 Atl. 707. The general principle which underlies these cases is that a claim acquired after the assignment cannot be set off against the assignee. If it cannot be set off against an assignee, it cannot be set off against a receiver of an insolvent corporation, who also holds in trust for creditors.

The doctrine of the three cases above referred to has no application, however, to the case in hand. In those cases no lien existed at the time of the receiver's appointment. In the case now under consideration the lien existed prior to the appointment. The note for $18,000, dated July 21, 1919, contained the following provision:

"The bank is hereby given a lien for the payment of this note and of all other claims against the undersigned which now exist or which may hereafter arise in favor of the bank upon * * * the balance of any account of the undersigned with said bank."

The note also provided:

"The bank * * * is hereby authorized at its * * * option, at any time, to appropriate and apply to the payment and extinguishment of this note, and of any or all of the notes, claims, or liabilities herein referred to, all moneys, bonds, and credits now or hereafter in the hands of the bank, on deposit or otherwise to the credit of or belonging to the undersigned. It is further agreed that in the event of insolvency of the undersigned, or on the occurrence of anything evidencing insolvency, this note, and all of said notes, claims, and liabilities, shall become and be immediately due and payable without notice or demand of payment."

[2-4] The consideration to support this agreement was the additional loan of $18,000. That this constituted a sufficient and valuable consideration for the agreement goes without saying. In addition to the lien, we find it, in like manner, agreed that in the event of insolvency, or upon the occurrence of anything evidencing insolvency, all notes should become immediately due and payable, without notice or demand of payment. That there were facts evidencing insolvency which accelerated the maturity of all the notes is so plain that really there is no ground for any dispute concerning it. The term "insolvency," as used in this agreement, is clearly intended in the usual sense. In Cunningham v. Norton, 125 U. S. 77, 90, 8 Sup. Ct. 804, 811 (31 L. Ed. 624), Mr. Justice Bradley, speaking for the court, said that—

"When a person is unable to pay his debts, he is understood to be insolvent. It is difficult to give a more accurate definition of insolvency."

The court below has found as a fact that there was some evidence of insolvency. The bill of complaint and the answer in the suit asking for the appointment of the receiver was the occurrence of something "evidencing insolvency," and was sufficient to mature the notes within the agreement of the parties.

[5, 6] The lien which the depositor by his express agreement gave to the bank was not displaced or affected by the appointment of the receiver. The rule is elementary that the appointment of a receiver does not disturb pre-existing liens upon the property, or vested rights or interests of third persons therein. In re Binghamton Electric Co., 143 N. Y. 261, 264, 38 N. E. 297. It makes no difference whether the lien has its origin in contract or arises by operation of law. See Kneeland v. American Loan & Trust Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379.

This court, in Wheaton v. Daily Telegraph Co., 124 Fed. 61, 59 C. C. A. 427, held that a bank had a right to apply its customer's deposit to the payment of his matured obligation as against a receiver appointed prior to the application. We find nothing in the facts of this case which prevented the bank from applying the balance of the Seaboard's deposit account to the payment of the notes matured by acceleration due to the bank from the depositor. The petition of the receiver for an order requiring the bank to turn over and pay to him the amount so applied was properly denied.

Judgment affirmed.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes