## CHARLES A. EATON CO. v. LOUIS MARK SHOES, Inc.

District Court, E. D. Pennsylvania. January 30, 1930.

No. 5267.

Henry W. Braude, of Philadelphia, Pa., for receivers.

716

Gordon A. Block, of Philadelphia, Pa., opposed.

## Sur Motion for Order on Philadelphia National Bank.

DICKINSON, District Judge. This particular phase of litigation, if it can be called such, comes with a refreshing air of candor and frankness. A question of legal right has arisen, which both parties are willing to submit to the arbitrament of the court. All formal and procedural questions have been waived, so that we can go directly to the substantial question and answer it in the light of its merits.

The question is one of importance, because it concerns the relations of banks with their depositors. It must often arise, because almost always, when a depositor fails, he is indebted to his bank on a loan or other account, and yet has a balance in his checking account. A prompt decision is called for, as the answer to the question of law must be translated into action. The law should in consequence be settled.

Perhaps an explanation may be found of the circumstance which has been commented on that no reported case can be found in which the courts of Pennsylvania have ruled upon the rights of a bank holding a matured claim of debt, in the fact that they have ruled upon the case of a debt not yet due. This argues that in view of the profession the rights of a bank holding a matured obligation have been settled. An extended discussion of the question would not be called for, except for the fact that counsel have discussed it very fully, and because of this we go into it more at length than we otherwise would.

When the receivers here were appointed (assuming that none had been appointed), the defendant company had a checking account balance with the Philadelphia National Bank of some $19,121.06. The bank, at the same time, held the demand note obligation of the depositor for $150,000, upon which there was due a balance of $93,750. These figures may not be accurate, but they are sufficiently so to present the question to be answered. Receivers were appointed upon the usual receivership bill. In pursuance of their duty they have made demand upon the bank for payment of the above-mentioned deposit balance. The bank sets up its claim, however it may be phrased, to retain this sum in reduction of the debt of $93,750 due it. Thus is raised the issue to be determined. All the evidentiary facts are stipulated, and the parties concerned, as we have said, submit themselves to the jurisdiction of the court to have their respective rights found.

Treating moneys on deposit to the credit of the defendant as receivership assets in the possession of the bank, and no different from other property of the receivership in the hands of a third person, such possessor (subject to any claims he may set up) may, by decree of the court, if there is submission to its jurisdiction, be ordered to surrender such property to the Receivers. This is the form we have given to the present proceeding. We go, then, directly to the question raised.

The whole discussion might be restricted to finding the answer to the question of what are the relations of a bank with its depositors? Is the relation that simply of debtor and creditor, or do the moneys deposited remain the property of the depositor, held by the bank as a warehouseman, or upon some form of trust? We will recur to this question later. As, however, the discussion has taken a much wider range, we will follow it.

A few general comments may clear the decks for action. If two persons have dealings out of which each becomes indebted to the other, and they have what are called mutual accounts, and the respective debts are of a like kind and each due and payable, the real debt of one to the other is the difference between the two accounts. If, however, the one holding the larger account sues the other, the controlling question shifts from the substantive one of what is really owing to the procedural question of how the defendant shall get credit for the amount he has against the plaintiff. In the strict logic of the common law, the only defense he could interpose must be introduced under what, in the old forms of pleading, would have been the plea of "payment," and the evidence must support this plea by proof of what would be payment in law. It might be, however, that what would be payment in law could not be found, and yet the facts and circumstances be such as to be a good payment in equity. In other words, the defendant had no defense at law, but a good equitable defense. As in Pennsylvania equitable defenses were always admitted in actions in assumpsit, at law a counterclaim could be shown, if it was in equity the equivalent of payment. Such a defense was introduced under the plea of "payment with leave, etc." This plea meant that the facts and circumstances were such that it would be inequitable in the plaintiff to enforce payment of his account without allowing credit for the counterclaim.

There might yet again be a fact situation under which the counterclaim was payment neither in law nor equity. To provide for this and to take care of the procedural features, if the defendant's claim exceeded that of the plaintiff, Pennsylvania, as early as 1705, gave to defendants the right of what came to be called "set-off." The right was to set off or, in the language of the statute, to "defalk" one account against the other. This right is purely statutory. The words of the statute permitted the defense to be introduced under the plea of "payment with leave, etc.," but the practice grew up of specially pleading "set-off." Indeed, either to make sure of having the required plea or out of that curious love of verbal trinity which pervades all the literature of the law, the usual plea became the triune one of "payment, payment with leave, etc., and set-off." Under the present practice any of these defenses is set up through a counterclaim. The law of Set-off and payment each had its own doctrines, as, for illustration, debts to be set off had to be due in the same right, and payment could be aided by bringing in the right known as the appropriation of payments and the like. It might be, however, that none of these defenses were available to a creditor defendant. He might not be able to successfully plead payment, either legal or equitable, nor set-off, as, for instance, when a debtor was claiming property in kind of his creditor without first paying his debt. Under such circumstances, the creditor must have recourse to a right of lien. This right might be statutory, or be given by contract, express or implied.

One further comment may not be out of place. When the debt sued for is due, and the claim of the defendant has not yet matured, if the plaintiff be insolvent, recourse is sometimes had to the fiction that insolvency matures a debt otherwise not due. These observations may be open to the criticism that they are academic and trite, but none the less they are essential to clear thinking.

The opinions accompanying the rulings in the adjudged cases must be read with these distinctions in mind. The rulings will be found to be consistent with these principles and to apply them, but the writers of the opinions have not always deemed it necessary to amplify the discussion of them. Expressions have crept into professional discussion and into the text-books which do not always mark these distinctions. For instance, the right of lien has been brought in where clearly it has no place. This is doubtlesss due in bank cases to a deference to the common concept of the relation between bank and depositor. When the concept is that the money deposited remains in kind the property of the depositor, of which the bank has possession as a sort of warehouseman (which is probably the common concept), to speak of the bank having a lien upon this property is intelligible enough; but, if the concept of this relation is that of debtor and creditor, to speak of the bank having a lien upon a debt which it itself owes, or rather one which is found to have no existence, is to attempt to express a thought which is difficult to grasp.

Bankers themselves make use of the same expression in what they call a bankers' lien upon deposits. When a bank, as is often done, incorporates in a demand or collateral note the pledge of the deposit balance of the maker, the expression of a lien is an allowable one; but there is underlying it the thought of property of the maker in the possession of the bank rather than the thought of a debt due by the bank to the depositor. In the latter case, what the bank gets by such a pledge is a contractual right to appropriate the debt which it owes to the depositor to the payment of the debt which the depositor owes it. Whether it has this right without this contract pledge, or without having made the appropriation in fact before the appointment of the receivers, is the real question before us. What the bank gets under such a pledge is the right to mature the debt before the maturity date.

This takes us to the question before suggested to be the keynote question in this cause of whether the relation between bank and depositor is that of debtor and creditor, or whether the bank is a warehouseman. The law of Pennsylvania is that the bank is a debtor and the depositor a creditor. Commercial Nat. Bank v. Henninger, 105 Pa. 496; Lebanon Iron Co. v. Donnelly (D. C.) 29 F.(2d) 411.

This proposition is moreover conceded by the very capable counsel who argued this cause for the receivers. It follows from this that, regarding only the legal rights of the bank and the depositor, the latter could enforce its claims only by a suit against the bank, in which action the bank could set off its loan claim, if due and payable. As the debt here was not only payable on demand, but such demand had in fact been made, the debt was due, unless by acceptance of payments on account the bank has extended the time of payment, or at least waived and withdrawn its demand. There is nothing in the facts stipulated from which an extension of the time of payment

could be found, so that we would have a debt payable on demand, even if a waiver or withdrawal of demand was found. This, under the law of Pennsylvania, would not of itself deprive the bank of the right to set off its debt. Moreover, upon demand by the depositor of the balance of his deposit, the bank would clearly have the right to appropriate the account to the payment of its debt. Farmers' Bank v. Penn Bank, 123 Pa. 283, 16 A. 761, 2 L. R. A. 273; Skiles v. Houston, 110 Pa. 254, 2 A. 30; Lebanon v. Donnelly (D. C.) 29 F.(2d) 411; Commercial Nat. Bank v. Henninger, 105 Pa. 496.

No well-founded doubt could exist that as between the depositor and the bank the former could not at the time of the receivership have compelled the latter to pay the deposit. It thus only remains to inquire whether the receiver is in a stronger position. This leads to an inquiry into the nature of this receivership. It is first to be observed that, unlike some statutory receiverships, there is no change of title. Title does not, as in the case of bankruptcy trustees, vest by operation of law in the trustee. Equity receivers are no more than the hand of the court to take the assets of the defendant into possession and hold them subject to such disposition as the court may decree. They have no existence outside of the jurisdiction of their appointment. Even within that jurisdiction they can, generally speaking, enforce no rights against third persons other than those the defendant could have asserted. The court, however, by the bill, takes over into its own custody and control the assets of the defendant. The strongest position which the receivers can assume is that they take the assets as they are when the receivers are appointed, and that no one can be permitted to interfere with this custody and control of the court; that, when the receivers were appointed, among the assets of which control was taken was this deposit balance, and that in consequence it remains in the hands of the court until disposed of by its order, and cannot be taken away from such control.

The sole dispute is thus reduced to one of custody and control. The fund may ultimately be found to belong to the bank, and may be so awarded, but in the meantime it must be in the possession of the court. The rights of all parties interested in a receivership have the fixity of a fly in amber by the magic of the appointment. McDonald v. Williams, 174 U. S. 397, 19 S. Ct. 743, 43 L. Ed. 1022; Blum Brothers v. Girard, 248 Pa. 148, 93 A. 940, Ann. Cas. 1916D, 609. At the same time the assets of the receivership estate are not increased by the appointment, but the receivers take only what the defendant before had. Philadelphia v. Northumberland, 258 Pa. 152, 101 A. 970.

These propositions have to different minds a significance which is dependent upon the concept had of the particular property under view. If the concept is of a deposit of tangible things, such as moneys may be, then the inference drawn is that such moneys pass to the receiver, and their then possessors cannot be permitted to loosen the grasp of the hand of the court upon them; but, if the concept of such a deposit is that of a chose in action, then all which passes to the receiver and under the control of the court is a claim of debt against the bank, to be enforced, and subject to all the defenses which the bank might interpose in an action by the depositor, to whose rights the receiver has succeeded.

The resourceful counsel for the receivers lays stress upon acceptance by the bank of payments on the demand note after demand of payment. The stipulation is merely of the evidentiary fact of payment of the mentioned sums and their acceptance by the bank as payments on account. From these facts alone the inferred fact finding is not justified that the bank waived any of its rights or withdrew the demand made. A mere withholding of the enforcement of its right to payment was not a waiver of anything. The ruling made must proceed upon the facts of a deposit balance and of an overdue note. This makes it unnecessary to pass upon the question of whether a demand note is payable until demand made, for here demand was made.

The final stand of counsel for receivers is upon the ground, which affords him the best footing, that the bank must rest its defense upon the doctrine of appropriation. Undoubtedly the bank had the right to appropriate this balance to the payment of its note. This it might have done by the simple expedient of charging the note to the deposit account. There is, however, a difference, as well as distinction, between a right to appropriate and an exercise of such right. Here there was no attempt at an appropriation in fact until after the appointment of a receiver. There is ample room for the finding which we make that the agreement tacitly reached was that the

fund, represented by the balance of the deposit should be under the control of the depositor, subject to the right of the bank to apply it to the payment of the note. Counsel for the receivers contend that this right of control passed to the receivers before the deposit was appropriated. After the court had assumed this control, it was beyond the power of the bank to interfere with its exercise or to change the status then existing. Here again this status and the effect of the receivership all depend upon what it was of which the court took possession. If it was a concrete thing, in the form of a sum of money, the consequences contended for by the receivers we think must follow; but if all which the court took under its care was a claim against the bank, or, as before stated, a mere chose in action, then all which the receivership estate has is the right to bring an action against the bank to recover the checking account balance, and to this demand the bank may interpose a defense which, under the old form of pleading, would be expressed in the pleas of "payment, payment with leave, etc., and set-off," and under the Practice Act of 1915 would take the form of a counterclaim. Evidence of a due and payable claim would support this plea.

■ This takes us once again to the nature of the relations between bank and depositor, and as we have found this to be that of debtor and creditor, all which the court took under its control was a chose in action to be enforced against the bank. The receivers are thus forced to take their stand upon the proposition of a tacit agreement between the bank and its depositor that the former would permit the withdrawal of the deposit moneys unless and until the bank had first made in fact an appropriation of the balance to the payment of the loan account by a charge of the latter to the deposit account or otherwise; that this was in effect a waiver of the right of appropriation as against any one to whom the right of the depositor had passed, and that the receivers upon their appointment had this right. That the payee of a check drawn and presented for payment before appropriation by the bank might, under some circumstances, assert an equity against the bank, need not be ruled, but that the general proposition laid down is unsound is shown by the case of Mt. Sterling v. Green, 99 Ky. 262, 35 S. W. 911, 32 L. R. A. 568. What is ruled is that the receivers have no such equity.

It only remains to refer to the cases which have been cited to us. Chipman v. Bank, 120 Pa. 86, 13 A. 707; Eastern Milling Co. v. Milling Co. (C. C.) 146 F. 761; Corn Exchange v. Locher (C. C. A.) 151 F. 764; Blum Brothers v. Girard, 248 Pa. 148, 93 A. 940, Ann. Cas. 1916D, 609—were all cases in which the debt was not due and payable. It is clear that, except upon the fiction of insolvency maturing a debt payable in futuro, such a debt would not be within the defalcation statute, and that under no right of appropriation (except by Statute or contract) could moneys of the debtor be applied to the payment of a debt before it was due. It is true that in the Corn Exchange Bank Case, supra, the bank by agreement was given the option of maturing any obligation before its due date. The right to appropriate, however, did not otherwise exist before maturity, and the debt was not due by its terms, and the bank had not matured it by declaring it to be due, although it had the power to so do. In the case before us the debt was due.

The cases of Wheaton v. Telegraph, Co. (C. C. A.) 124 F. 61; Wright v. Seaboard (C. C. A.) 272 F. 807; In re Cross (C. C. A.) 273 F. 39—support the conclusion we have reached. Harter Bank of Canton, Ohio, v. Inglis (C. C. A.) 6 F.(2d) 841, even goes so far as to give expression to the opinion that a deposit may be appropriated to the payment of an unmatured debt. Into this, however, we need not go.

The conclusion reached is that the order prayed for should not issue, but we leave to counsel the submission of an appropriate decree in accordance herewith.

### Sur Motion for Order on the Colonial Trust Company.

In accordance with the opinion filed (q. v.) in the case of the Philadelphia National Bank, the above motion should be denied.

An appropriate decree may be submitted.