**H. LANG & CO. v. NORTHERN JOBBING CO. (AMERICAN NAT. BANK OF ST. PAUL, MINN., Garnishee).**

No. 3014.

District Court, D. Minnesota, Third Division.

March 26, 1938.

Paul G. Bremer and Samuel Lipschultz, both of St. Paul, Minn., for garnishee.

C. A. Taney, Jr., and Fowler, Youngquist, Furber, Taney & Johnson, all of Minneapolis, Minn., for the plaintiff.

SULLIVAN, District Judge.

The above-entitled matter came on for hearing before the court upon the motion of the American National Bank, St. Paul, Minnesota, the above-named garnishee, for an order of this court dismissing and discharging it as the garnishee in the above proceeding, upon stated grounds 1, 2, 3, and 4, as set out in its notice of motion.

The examination of the garnishee in the garnishment proceeding herein disclosed the following:

That at the time of the service of the summons in garnishment, the defendant was indebted to the garnishee on three promissory notes in the usual form, in the respective sums of $25,000, amounting in the aggregate to $75,000, bearing dates, respectively, October 2, 1937, November 12, 1937, and November 12, 1937; the first two of such notes being due on December 31, 1937, and the third note being due on January 7, 1938, and all bearing interest at the rate of 5 per cent. per annum. That in addition to the indebtedness represented by the three foregoing notes, the defendant was indebted to the garnishee in the aggregate sum of $70,240, evidenced by sixty-two promissory notes, each of said notes containing a collateral agreement as to security and pledge, hereinafter set out, and said notes bearing various dates from September 7, 1937, down to December 2, 1937, and all due ninety days after date.

These so-called collateral notes are specifically secured by warehouse receipts and sundry stocks, and other securities as shown by the collateral record of the said garnishee, all of the agreed value of $93,878.96. This value represents, by agreement between the defendant and the garnishee, the cost of the merchandise, or the market value thereof, whichever is the lower, and are further secured in the manner and way set out in the collateral agreement in said notes, the provisions of which, for the purpose of reference, are divided as follows:

(a) "As security for the payment of this Note and of any and all other obligations or liabilities, direct or contingent, due or to become due, of the undersigned or any of them, to said bank, whether now existing or hereafter incurred or acquired, the undersigned, jointly and severally, have deposited and hereby pledge all property herein described and all their moneys, deposit account balances, and property now or at any time hereafter in the possession of said bank for any purpose whatsoever, with the right to resort first to any part of the security.

(b) "The undersigned jointly and severally agree to deposit with said bank additional security as it may from time to time be demanded.

(c) "If such additional security is not so deposited or if this note or any of the aforesaid obligations, liabilities or agreements, or the interest hereon or thereon, is not paid, or upon the declared insolvency or appointment of a receiver for, or commencement of bankruptcy proceedings, by or against, the undersigned, or any guarantor, surety or endorser hereof, or upon the actual or attempted garnishment or attachment of said

security, all liabilities of the undersigned to said bank, including this note, shall at the option of said bank, without notice or demand of payment thereof, become forthwith due and payable, and thereupon the holder hereof may collect, receive and realize upon said security and sell each or any part thereof at public or private sale, with or without notice of such sale or demand for payment of this note or any other said indebtedness, liability or obligation * * *."

No part of the indebtedness of the defendant to the garnishee, as evidenced by the promissory notes, collateral, and the plain notes, was due from the defendant to the garnishee, in accordance with the tenor of the notes, at the time of the service of the summons in the garnishment proceeding, upon the garnishee. The disclosure of the garnishee shows that the value of all property of the defendant in the possession of the garnishee at the time of the service of the summons upon it was $123,498.04, comprising the following items, viz.:

$93,878.96—the value of the merchandise, represented by the warehouse receipts covering merchandise..

$29,619.08—representing the sum total of two checking accounts carried by the defendant with the garnishee.

The total indebtedness of the defendant to the bank, the garnishee herein, on that date was $145,240.70. The account between the defendant and the garnishee on the date of the service of the summons in garnishment upon the garnishee may be summarized as follows:

On December 7, 1937, five days after the date of the service of the summons upon the garnishee, the garnishee applied the sum of $29,619.08, the amount in the two checking accounts of the defendant with the garnishee, as follows: The sum of $24,916.66 was applied to the payment of one of the $25,000 notes, that being the amount then due on said note; and the sum of $4,702.42 was applied as a partial payment on another of the $25,000 notes, leaving a balance of $20,297.58 unpaid on said note.

The total value of all collateral, including moneys in checking accounts and warehouse receipts, as such value was agreed upon, was, on the date of the initiation of the garnishment proceeding, $21,742.66 less than the amount of the defendant's indebtedness to the garnishee.

It is conceded by the garnishee that the defendant, at the time of the service of the garnishee summons, was solvent, and also that the notes representing the indebtedness owing by the defendant to the garnishee were not, at the time, due and payable to it. Therefore, the court is not concerned with the law applicable to the equitable right of set-off or "banker's lien," so called. The rights of the garnishee are based upon the contract provisions of the collateral notes hereinbefore referred to.

1. The sole question which confronts the court is: Are the provisions of the collateral notes and the agreement therein contained, sufficient to effect a pledge of the moneys in the checking accounts of the defendant, and the warehouse receipts and merchandise represented thereby, to secure

| Owing garnishee by the defendant | | |
|---|---|---|
| Notes | $25,000.00 | |
| | 25,000.00 | |
| | 25,000.00 | $ 75,000.00 |
| 62 collateral notes | | 70,240.70 |
| Owing defendant by garnishee | | |
| Checking account general $28,764.15 | | |
| Checking account payroll 854.93 | | $ 29,619.08 |
| Value of warehouse receipt collateral | | 93,878.96 |
| Totals | $145,240.70 | $123,498.04 |
| Deficiency | | 21,742.66 |
| | | $145,240.70 |

the payment of all indebtedness owing by the defendant to the garnishee?

When a bank receives a deposit, without condition or restriction, and gives credit for it to a depositor in his checking account so that the depositor may draw against the same, and there are no contrary agreements or understandings, a relationship of creditor and debtor is created between the bank and the depositor. See Burton v. U. S., 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482; Hardee v. George H. Price Co., 67 App.D.C., 25, 89 F.2d 497. So in the case at bar, if nothing further than the depositing of the money by the defendant in the garnishee bank were done, the relationship of creditor and debtor would be the only relationship existing between the garnishee and the defendant, but something further was done by the parties: The collateral notes containing the pledge agreement were given, and consequently the garnishee, in its relations with the defendant, acted in a twofold capacity: First, upon receiving the money as a deposit from the defendant, the relationship of debtor and creditor was created; and, second, by reason of the pledge agreement set out in the collateral notes, the relationship of pledger and pledgee was created.

Subdivision (a) of the collateral notes pledged all of the property—that specifically described in the note, and also all moneys owing on checking accounts—as security for the payment of any and all indebtedness owing by the defendant to the garnishee, and a lien was thereby created upon all property of the defendant then or thereafter coming into the possession of the garnishee as security for any and all indebtedness of the defendant to the garnishee, whether the same was then owing, or whether an indebtedness was subsequently incurred by the defendant to the garnishee. The agreement contained in the collateral notes is a unitary contract, and is to be construed, like other contracts, according to the plain, ordinary meaning of its words. Subdivision (a) is one of its provisions, and must likewise be given the plain meaning of its words. Its meaning is plain. It is a definite and certain pledge of the property described in the collateral notes, and also all of the money, deposit account balances, etc., of the defendant in the possession of the garnishee, as security for the payment of the particular note and "of any and all other obligations or liabilities * * * due or to become due, of the undersigned (defendant)

* * * to said bank (garnishee) whether now existing or hereinafter incurred * * *." The language is positive. It constitutes a present pledge, as of the date of the collateral notes, of the property, money, checking account balances, etc., then in the possession of the garnishee, or to come into its possession, as security for the then existing indebtedness of the defendant to the garnishee, and of any indebtedness thereafter incurred by the defendant to the garnishee. Nothing was left to be done in the future to subject said properties to the pledge, as was the situation in the case of Corn Exchange National Bank v. Locher et al., 3 Cir., 151 F. 764, 765. The language in the agreement under consideration in that case read as follows: "All moneys * * * in the hands of the said bank, belonging to the undersigned, may at all times, *at the option* of the bank, be held." (Italics supplied.) And the court, in passing, held that the above-quoted excerpt from the agreement did not create a present lien upon any fund in the hands of the bank, and that a lien in favor of the bank did not come into existence until the bank had exercised the option given to it in the writing to make the indebtedness owing it a lien upon the property of the defendant in its hands.

The Circuit Court of Appeals for the Second Circuit, in the case of Wright v. Seaboard Steel & Manganese Corporation, 272 F. 807, 811, had under consideration the provision in a collateral note reading as follows: "The bank is hereby given a lien for the payment of this note and of all other claims against the undersigned which now exist or which may hereafter arise in favor of the bank upon * * * the balance of any account of the undersigned with said bank." This provision appeared in a note given by the defendant to the bank subsequent to another note made by the same maker, to the bank. Neither of the notes were due upon the date of the appointment of a receiver for the defendant company. The bank, when it received information of the receivership proceeding, declared the notes due under and by virtue of an acceleration clause appearing in the note containing the collateral agreement, and applied the moneys of the defendant in its checking account with the bank, upon the note bearing the prior date. The court, in passing, gives full force and effect to the provision creating a lien in and upon the bank account of the defendant, and on page 811 of 272 F., states: "In the case now under consideration the lien existed prior to the appoint-

ment" (receiver). And again, on page 812, of 272 F., the court states: "The lien which the depositor by his express agreement gave to the bank was not displaced or affected by the appointment of the receiver."

In the case at bar, an express contract establishes a lien in favor of the bank upon the checking account balances in the bank, in the name of the defendant, and also upon the specifically described warehouse receipts and property represented thereby, and this lien in favor of the garnishee was and is security, not only for the sixty-two collateral notes, but also for the three $25,000 notes made by the defendant to the garnishee, and the garnishee at the time of the service of the summons upon it, and at the time of the disclosure herein, was the owner and holder of said notes.

2. The agreement in the collateral notes contains an acceleration clause set out as subdivision (c) hereinbefore. Under this clause the garnishee had the right to declare all the notes made by the defendant to it and all indebtedness owing to it by the defendant due and payable upon the happening of any of the contingencies referred to in said subdivision (c), and had the right and power to appropriate and apply all the moneys and properties of the defendant in its hands at that time to the payment of any and all indebtedness of the defendant to it. This construction of a similar contract is approved by the court in the case of Updike et al. v. Manufacturers' Trust Company, 267 N.Y. 528, 196 N.E. 563, Court of Appeals of N. Y., April 16, 1935. See, also, Wright v. Seaboard Steel & Manganese Corporation, supra.

The exercise by the garnishee of the rights given to it by the provisions of subdivision (c) does not affect the lien created in subdivision (a), save and except that the exercise of such rights granted in subdivision (c) constitutes a foreclosure of the lien to the extent of the amount of moneys in the checking accounts of the defendant in the garnishee bank, and which were applied as payment on defendant's indebtedness to the garnishee.

3. The bank cannot be held as a garnishee in this proceeding unless it appears that at the time of the service of the garnishee summons upon it, it at that time had in its possession "money or things" belonging to the defendant, which, at said time, were "due absolutely, and without depending on any contingency." See Mason's Minn.St.1927, § 9361.

The general bank balances of the defendant in the garnishee bank were pledged to the bank, as were also the described bills of lading and the property represented thereby, and any other property of the defendant in the possession of the garnishee as security for all indebtedness owing by the defendant to the bank on the date of the service of the summons upon the garnishee. All of the defendant's property was subject to a lien on that date in favor of the garnishee to the extent of the defendant's indebtedness to it. At the time of the service of the garnishee summons, the defendant was indebted to the garnishee in an amount in excess of $21,742.66 over and above the value of any moneys or properties of the defendant in the possession of the garnishee. At the time of the service of the garnishee summons there was no property or moneys of the defendant in the possession of the bank due absolutely and without depending on a contingency, to the defendant. All were impressed with the lien created by the contract between the defendant and the garnishee.

The motion of the garnishee should be and is granted, and the garnishee is hereby dismissed and discharged in this proceeding.