5 | 193
94 | 33

# CHANCEY SPEAR, Complainant, Appellee,

## vs.

# BENJAMIN DEY and MARGARET DEY, his wife, Defendants, Appellants.

### APPEAL IN EQUITY FROM COLUMBIA CIRCUIT COURT.

D. set up in his answer that he purchased the interest of S., the complainant, in a mill owned jointly by H. & S. for $1,600, that he paid down $450, a note and mortgage for $750, and his bond conditioned to pay one-half the indebtedness of H. & S. incurred in building and furnishing the mill, the whole indebtedness not exceeding $800; that he found the indebtedness much larger, and had paid already in all about $1,300, and prayed that the amount of such indebtedness exceeding $400 might be set off against the note and mortgage. Held, that the defendant was not entitled to such set-off.

In a proper case a court of equity will apply the doctrine of set-off in virtue of its general jurisdiction, independently of the statute.

Chap. 84, § 8, Revised Statutes provides for the set-off of claims in like cases as in actions at law.

THIS is an appeal in equity from a decree of the Circuit Court of Columbia county.

The bill was filed by Spear, the complainant, to foreclose a mortgage given by the defendants to the complainant on the 18th day of October, A. D. 1852, to secure the payment of $700, upon certain lands in the bill described, together with interest at the rate of twelve per cent. per annum.

The bill was in the usual form, and was filed the 16th day of August, 1854.

The defendants answered, under oath, admitting the execution and delivery of the mortgage as set forth in the bill, and further answering, alleged that the notes and mortgage were given to secure part of the purchase money of one-half of a mill situated in Wyocena in the county of Columbia, which the said Benjamin Dey purchased of the complainant: that the complainant and one Hunter (since deceased) built the mill, as partners, and in so doing had incurred a large amount of debts, and were anxious

that the defendant should purchase the interest of the complainant, which was one-half of the mill, and that the said Hunter and the complainant assured and promised the defendant that if he would do so, the complainant's half of the mill should not cost him, the defendant, in any event, over the sum of $1,600; and upon the faith of these assurances, the defendant proceeded to negotiate with the complainant for his half of the mill, and thereupon the complainant desired the defendant to bind himself to pay one-half of the debt then owing by the said Hunter & Spear, and which had been contracted for the building, and furnishing of the said mill, and to pay or to secure to the complainant the further sum of $1,200 ; and to induce the defendant to make such contract the complainant falsely and fraudulently represented to, and assured the defendant that the said debts of Hunter & Spear did not probably amount to more than $600, and at all events would not exceed the sum of $800 ; which representations and assurances were false and fraudulent, and calculated to, and did deceive, the said defendant : that the said defendant was wholly unacquainted with the amount of the indebtedness of the firm of Hunter & Spear, and relying wholly upon the representations that their indebtedness did not exceed the said sum of $800, the defendant made and executed a bond, and delivered the same to the complainant, in the penal sum of $1,000, conditioned to pay half of the debts of Hunter & Spear, incurred in building and furnishing the mill, and paid to the complainant the sum of $450, and at the same time made and executed, together with Margaret Dey, his wife, the mortgage and notes, in the bill of complaint mentioned.

And in the answer it was further alleged, that at the time of the execution and delivery of the said mortgage, the defendant was mistaken and deceived through the false representations of Hunter and Spear, and at the time did not really believe that the amount of their indebtedness exceeded the sum of $800, when in truth and in fact it amounted to double that sum, or nearly so ; and that the defendant had paid about the sum of $1,300 of indebtedness of the firm of Hunter & Spear, contracted in building and furnishing the mill, and that a large

amount of indebtedness remained unpaid: and that before the defendant discovered that the debts of Hunter & Spear amounted to more than $800, the defendant had paid to the complainant $450, and had paid a large amount of the indebtedness of Hunter & Spear, and had made great and valuable improvements and additions upon the mill.

The defendants admitted possession of the mill; and asked an account to be stated of the amount of the debts of the firm of Hunter & Spear, which had been paid by the defendant, and that the sum which he had paid in the discharge of the indebtedness of said firm over $400, might be set off in payment or discharge of the said notes and mortgages; alleging a willingness, and offering to pay the sum remaining due, after such set-off was made.

General replication.

At the February term, 1856, the case was brought to hearing upon the bill, answer and replication, without any evidence being offered in support of the answer, and upon the introduction of the notes and mortgages in evidence, and upon proof of the amount due thereon, a final decree of foreclosure and sale was rendered accordingly; from which decree the defendants appealed.

*Pulling & Doty*, for the appellant.

1. A defendant entitled to set-off, may state the facts in his answer, and claim the set-off without filing a cross bill. 8 *Paige*, 503 ; 10 *id*. 319 ; 7 *id*. 208.

2. If there is a connection between the demands, equity acts upon it, and allows a set-off under particular circumstances. *Story's Eq. Jurisp*. § 1434.

*Dixon & Prentiss*, for the appellee.

By the Court, COLE, J. We do not think that the facts set up in the answer of the appellant constitute any defence to the

bill filed in this cause. The appellant states, in his answer, that he purchased the interest of the complainant (which was one-half) in a certain mill, situated at Wyocena; and that the consideration therefor was not to exceed sixteen hundred dollars. He paid four hundred and fifty dollars down, gave notes and the mortgage which is sought to be foreclosed in this suit, for seven hundred and fifty dollars; and also gave his bond in the penal sum of one thousand dollars, conditioned to pay one-half of the indebtedness of Hunter & Spear, incurred in building and furnishing the mill, and which indebtedness, he says, the complainant assured him would not exceed the sum of eight hundred dollars. In other words, as a part of the purchase money, he agreed and became liable to pay debts of Hunter & Spear, to the amount of four hundred dollars. He states that he found the indebtedness of Hunter & Spear much larger than had been represented, and that he had paid for them some thirteen hundred dollars. However, he was under no sort of obligation, legal or moral, to pay that amount for them, and if he has really done so, they certainly ought to be very thankful to him for his kindness, and we might have said that he had shown an unusual degree of disinterestedness, if he did not seek to offset the amount thus paid against what is due upon his mortgage. But this he cannot be permitted to do. There are no peculiar equities in the case, as we can discover, which entitle him to make such an offset. He does not allege that the debts of Hunter & Spear, paid by him, were liens upon the property he purchased, either by way of mortgage or otherwise. And the matter is perfectly inexplicable why he paid for them nine hundred dollars more than he was obliged to pay.

Suppose he had voluntarily paid the personal debts of the complainant, would it be right to allow him to set off the amount thus paid, without regard to equities that might exist between the complainant and his creditors? In this case it might lead to great injustice to permit him to make the set-off. The firm of Hunter & Spear, are personally liable for these debts. It does not appear but they are solvent: or they may have good defences against some of these very debts paid by the appellant.

Considerations of this nature show how inequitable and improper it might be to sustain the defence and permit the set-off to be made.

In a proper case a court of equity would undoubtedly, by virtue of its general jurisdiction, apply the doctrine of set-off, independently of section 8 of chapter 84 of the Revised Statutes, which provides that in suits in chancery for the payment of money, set-offs shall be allowed, in the same manner, and with like effect as in actions at law. But for the reasons assigned, we think this is not a proper case for the application of the principle.

Decree of the Circuit Court affirmed, with costs.