JAMES C. JOHNSTON, Appellee, v. ED. I. GRIMM et al., Appellees; W. C. AXMEAR, Appellant.

No. 40119.

MARCH 11, 1930.

*Hamilton & Updegraff* and *F. M. Beatty,* for appellant.

*Clyde McFarlin* and *William C. Hall,* for James C. Johnston, appellee.

*Wallace & Claypool* and *George B. Baker,* for Ed. I. Grimm, Katie Grimm, and George Gorsh, appellees.

*Willcockson & Willcockson,* for C. L. Musgrove, appellee.

*Edwin Willcockson,* for Keokuk County, appellee.

KINDIG, J.—The only question involved is whether the district court properly sustained the motion of the plaintiff and appellee, James C. Johnston, to strike the answer of W. C. Axmear, the defendant and appellant. Issues raised in the court below by George Gorsh, the intervener and appellee, and Ed. I. Grimm, Katie Grimm, C. L. Musgrove, R. J. Price, H. M. Price, and Keokuk County, defendants and appellees, are not before us. They did not appeal. This controversy, then, is narrowed to the dispute between the appellee Johnston and the appellant, Axmear. For the sake of convenience, therefore, hereafter Johnston will be referred to as the appellee, and Axmear as the appellant.

On March 8, 1929, the appellee commenced an action to foreclose a mortgage on Keokuk County real estate, securing a note for $20,000. Said note and mortgage were dated February 27, 1920. C. L. Musgrove, previously named, was the maker of the note and the grantor in the mortgage. After the ex-

ecution of the note and mortgage, Musgrove sold and conveyed the premises to appellant and one John Price, on February 21, 1921. In the deed executed by Musgrove and accepted by the appellant and Price, as grantees, there was a clause wherein the grantees assumed and agreed to pay said $20,000 mortgage indebtedness. Consequently, appellee included appellant as a defendant in the foreclosure suit.

Within the time required, the appellant filed his answer to appellee's petition. Contained in appellant's answer were two defenses: First, a general denial, except as to admissions, modifications, and explanations afterwards made; and, second, an allegation modifying and explaining the assumption clause in the deed. Further setting forth his defense, the appellant stated that he and said John Price acquired the real estate from said Musgrove through the sale and exchange of other farm lands therefor. Price and appellant were the parties upon the one hand, and Musgrove the party upon the other. Under that transaction, Musgrove agreed to sell and transfer to Price and the appellant the real estate named in appellee's petition, and in consideration therefor, Price and appellant agreed to sell and convey to Musgrove 80 acres of land also located in Keokuk County. Accordingly, the deeds were delivered to the respective parties for the respective lands. As before stated, there was a $20,000 mortgage at that time upon Musgrove's land, and that is the indebtedness named in appellee's petition. Likewise, on the aforesaid occasion, there was an $11,000 mortgage on the land belonging to Price and the appellant. It was part of the understanding and agreement that Price and the appellant, as grantees in the deed from Musgrove, and Musgrove, as grantee in the deed from Price and appellant, should respectively assume and agree to pay the mortgages therein respectively named. Thus the deeds were delivered. Since that transaction, Price has died, and his estate is not directly involved in this appeal.

Continuing in the answer, appellant alleged that Musgrove repudiated and failed to carry out his contract in reference to the payment of said $11,000. Moreover, appellant asserts that Musgrove became a voluntary bankrupt, was adjudged such, and in the proceedings therefor listed among his obligations the $11,000 mortgage indebtedness which he had previous-

ly agreed to pay, under the assumption clause in the deed from appellant and Price. Again, appellant alleges that thereafter the $11,000 mortgage became due, and Musgrove neglected, failed, and refused to pay the same, or any part thereof. Foreclosure proceedings were commenced by the mortgagee in the $11,000 mortgage, and Price and the appellant were made parties therein. That action resulted in a judgment against both Price and appellant for $12,065.87. Furthermore, appellant pleaded that Musgrove wholly failed to perform and carry out his part of the agreement.

Upon the matters thus set forth, appellant claims: First, a complete defense; and second, in the alternative, a set-off to the amount of $12,065.87, which is the sum named in said judgment. To that answer, appellee filed a motion to dismiss, the theory thereof being that the appellant did not state sufficient facts to entitle him to the relief demanded. A hearing was had upon the motion, and the district court sustained it. Appellant elected to stand upon the answer, and judgment was entered accordingly for the full amount of the $20,000 mortgage, interest, and costs. From this judicial action Axmear appeals.

Support for the trial court's action is offered by the appellee through the argument: First, that the appellant in his answer did not allege that he had paid the judgment on the $11,000 mortgage; and second, that the appellee had a right to accept appellant's assumption and agreement to pay, contained in the Musgrove deed. Under such circumstances, appellee says, appellant's complaints against Musgrove become immaterial. Replying thereto, appellant insists: First, that he has a good defense against the assumption clause, so far as Musgrove is concerned; and second, that appellee can recover only through the grace of the assumption agreement, and therefore whatever defense appellant has as against Musgrove can be interposed to defeat appellee's cause of action.

Therefore, under the theories advocated by the respective parties, it is necessary to determine: First, whether appellant has a defense against Musgrove; and second, if so, whether the same can be asserted against the appellee.

I. Were Musgrove suing, instead of appellee, could appellant assert, as a total or partial defense, the matters set forth in the answer? Appellee maintains that appellant has

no defense in any event, because he has not paid the judgment on the $11,000 mortgage. Basis for that position on appellee's part is the holdings of this court to the effect that, as between the mortgagor and a subsequent purchaser who assumes and agrees to pay the mortgage, "the purchaser becomes the primary debtor, and the prior mortgagor the secondary debtor." *Thomsen v. Kopp*, 204 Iowa 1176, and similar cases.

So it is argued that appellant cannot recover in any event, he being the secondary debtor, and not having himself paid the $11,000 mortgage for which Musgrove is the principal debtor. Such theory, however, does not solve the problem. There is more involved in this litigation than the mere attempt on the part of appellant to obtain affirmative relief. Here appellant is not asking for an independent judgment against Musgrove, but rather, he is seeking to avoid the injustice of Musgrove's default, through the principles of equity. Foundation for the doctrine that a surety cannot sue the principal until the surety has paid is laid upon the ground that, until then, the principal is not the surety's debtor. Through the payment by the surety, there arises an implied promise on the part of the principal to reimburse. 21 Ruling Case Law 1097, Section 134. That is the general rule.

Under the facts here presented, the general relationship between principal and surety is not involved; for the principal debtor renounced his obligation, and, by bankruptcy, absolved himself from all liability therefor. Because of the bankruptcy, any possible responsibility for the indebtedness is removed. Musgrove, in the case at bar, was insolvent, and, as suggested, through bankruptcy removed all liability on the $11,000 mortgage. He had assumed and agreed to pay that obligation, and thus relieve appellant (as between the vendor and vendee) from the necessity of doing so. But, because of the bankruptcy, Musgrove is no longer in actuality (though he may be in law) the principal obligor. In truth, for all practical purposes, he is not a debtor at all. Neither the mortgagee under the $11,000 mortgage nor appellant can enforce the assumption contract, because of the bar in bankruptcy. Appellant, however, in practical effect, is absolutely liable to said mortgagee on the $11,000 mortgage; for he is the grantor in that instrument, and the maker of the note secured thereby. Thus appellant's respons-

ibility as a matter of fact is fixed and absolute. Due to the bankruptcy proceeding, Musgrove has thrown all this financial burden upon appellant. There is no escape therefrom for him. Consequently, appellant in practical effect (regardless of what may be the case in law) is no longer secondarily liable as a mere surety.

The effect of Musgrove's bankruptcy has changed appellant from a position of secondary liability only, to a place of fixed and certain responsibility. This result, under the circumstances and facts here presented, cannot be avoided by appellant. Thereby Musgrove, through repudiation of the contract and voluntary bankruptcy, has placed upon appellant the certain obligation of paying the $11,000 mortgage. If, then, appellant is required to pay the $20,000 mortgage which he assumed, and also remains liable for the $11,000 mortgage which Musgrove assumed, then appellant must pay $31,000, plus interest and costs. That was not his bargain. When considering the $31,000 total, appellant, to the extent of $11,000 thereof, would be harmed and prejudiced because Musgrove repudiated the debt through the bankruptcy proceedings. Musgrove, therefore, is enjoying a consideration bestowed upon him by appellant to the extent of $11,000, plus interest and costs, for which the former refuses to perform a contract with the latter, out of which that consideration grew. A breach of contract, therefore, arises, but appellant cannot successfully sue Musgrove therefor, because of the bankruptcy. Necessarily, then, the only remedy which appellant has left is equitable relief against his assumption of the $20,000 mortgage in suit. Should Musgrove be permitted to enjoy appellant's $20,000 assumption in an appropriate action, he (Musgrove) would be benefiting himself, through repudiation and bankruptcy, at appellant's expense, to the extent of $11,000, plus the interest and costs. Voluntary bankruptcy, under the circumstances, is repudiation of the executory agreement. *Kamps & Sacksteder Drug Co. v. United Drug Co.,* 164 Wis. 412 (160 N. W. 271).

Justice and equity demand that Musgrove should not profit at appellant's expense and enjoy the benefits of the latter's assumption of the $11,000 mortgage, under the record here presented. Forsooth, appellant does not directly or indirectly owe Musgrove $31,000, under the agreement set forth in the answer,

but only $20,000, under the assumption clause. Wherefore, the ordinary rules preventing a surety from suing the principal do not apply in the premises. The reasons therefor are removed because of the peculiar predicament of appellant, brought about through the repudiation and bankruptcy of Musgrove. Through equitable recoupment or set-off, equitable exoneration, or some other equitable principle, appellant should be protected to the extent that, when the litigation is completed, Musgrove cannot, directly or indirectly, recover more than $20,000, plus interest and costs. Otherwise, appellant has no relief, because a judgment against Musgrove could not be legally obtained, due to the bankruptcy proceedings. Resultantly, there is no remedy or protection for appellant except through equitable relief before judgment is obtained against him on the $20,000 mortgage assumption clause.

Recoupment is defined in *Medart Pulley Co. v. Dubuque Turbine & Roller Mill Co.*, 121 Iowa 244 (local citation 248). And set-off is explained in *DeLaval Sep. Co. v. Sharpless, Harl & Tinley*, 134 Iowa 28. See, also, 34 Cyc. 633, 636, and 638. Both recoupment and set-off may be applied in equity. 34 Cyc. 623; *DeLaval Sep. Co. v. Sharpless, Harl & Tinley*, supra. Equitable exoneration and other equitable relief for a surety before paying the obligation are recognized and discussed in 21 Ruling Case Law 1097, Section 134; 32 Cyc. 248; *Tillis v. Folmar*, 145 Ala. 176 (39 So. 913). See, also, *Des Moines Bridge & Iron Works v. Plane*, 163 Iowa 18. Whether appellant's relief is to be worked out through equitable recoupment, equitable set-off, equitable exoneration, or some other equitable principle, is immaterial, so far as the issues here presented are involved. No claim is made that there is a need of our distinguishing one remedy suggested from the other, and pointing out which is the vehicle upon which appellant must ride, to obtain the desired redress. Regardless of the particular designation given to the method pursued, equity is more flexible and relief-affording than the law. Equity, therefore, will grant relief here.

The answer, then, sets forth a defense, and should not have been stricken, under appellee's motion; but appellee suggests that the $11,000 judgment may have been paid through foreclosure of the 80-acre farm, or by some party responsible therefor or interested therein. Considering the entire answer, as

we must, it is fair to say that the necessary meaning of the allegations therein contained is that Musgrove did not perform his obligation and pay the debt, and therefore that the same has not been satisfied. If the allegations contained in appellant's answer are not true, the appellee may, if he chooses, raise an issue thereon by appropriate pleading, and the trial can proceed accordingly.

Under the facts in the record, it is not necessary for appellant to first pay the $11,000 mortgage. See *Ross v. Warren*, 196 Iowa 659 (local citation 661), and authorities cited above. His liability under the evidence finally adduced may be for the entire sum of the $11,000 mortgage, plus interest and costs, or only a part thereof. Whatever said liability may be, appellant is entitled to protection thereon by a reduction *pro tanto* of his responsibility under the $20,000 mortgage.

II. Total relief from the $20,000 assumption clause cannot be had by appellant, under the facts. It is true that the contract is partly executory, but it is not wholly so. Musgrove gave appellant the farm incumbered by the $20,000 mortgage, plus the former's assumption of the $11,000 mortgage, wherein the latter was mortgagor; while, in return therefor, appellant gave Musgrove the 80 acres of land incumbered by the $11,000 mortgage, plus the former's assumption of the $20,000 indebtedness created by the latter.

Two elements appear in the consideration furnished by each party: First, the land; and second, the assumption clause. It cannot be said that one assumption clause was the full and separate consideration for the other assumption clause. The land consideration also must be taken into account. Rescission, because of Musgrove's repudiation and breach of contract, was not made by appellant. Some consideration was received by the appellant, regardless of Musgrove's assumption of the $11,000 mortgage: that is, the land covered by the $20,000 mortgage was conveyed to appellant and Price. Having thus retained the land and failed to rescind, appellant is not entitled now to defeat the entire $20,000 obligation. But, under the principles of equity previously discussed, he should be allowed protection, under the facts, so far as the $11,000 mortgage is concerned, as above indicated.

III. Thus it is concluded that appellant has a defense against Musgrove. It is now to be determined whether he can invoke that defense against the appellee. There was no performance by Musgrove so far as the $11,000 is concerned. Support for the assumption agreement was the consideration furnished by Musgrove. Many times this court has been called upon to consider that general subject-matter relating to the consideration, as well as the equities, between the various parties. Reference to some of the cases will enlighten the reader. While discussing the principles here involved, we said, in *Malanaphy v. Fuller & Johnson Mfg. Co.*, 125 Iowa 719, reading on pages 722 and 723:

"It is well settled doctrine that, where one for a sufficient consideration agrees to assume and pay the debt of another, the creditor is impliedly included as within the privity of the promise, and he may single out the promisor and sue him by direct action. * * * Necessarily, the rights of a party for whose benefit a promise is made must be measured by the terms of the agreement between the principal parties, and the right to recover from the promisor is not absolute in all cases. Among other limitations, the party to be benefited takes subject to *all inherent equities arising out of the contract, as affecting the principal parties one with the other*. [The italics are ours.] This follows naturally from the relation of privity which the law implies."

Again, in *Gray v. Bricker*, 182 Iowa 816, we declared:

"But this obligation [the one growing out of the assumption clause] arises from the contract implied from the acceptance of the deed, and not owing to the terms of the promissory note; and, though such contract may affect the security of the note, it has no bearing on its negotiability. It amounts to no more than a contract with one person to pay the debt of another to a third person; and, under the law of this state, the latter may recover thereon. * * * But such a contract is not impressed with the law of negotiability, even though the indebtedness undertaken to be paid be that evidenced by a promissory note, and is subject to defenses such as may be interposed to the enforcement of other contracts."

Similarly, in *Clarinda Nat. Bank v. Kirby,* 191 Iowa 786, reading on page 792, we made this statement:

"The appellant [a mortgagee protected by a deed with an assumption clause] is not in position to claim any rights as an innocent purchaser. The defendant [the assumer] is not liable as a maker of the note, nor as indorser or guarantor thereof. If liable at all, it is upon the alleged contract found in the Kempton deed to him, to assume and pay the mortgage debt. That contract or agreement is nonnegotiable; and, in the absence of any estoppel, he may plead and prove, if he can, that it was obtained by fraud or false representations, or was wholly without consideration, as against any person seeking its enforcement."

Also, in *Guarantee Mtg. & Fin. Co. v. Cox,* 201 Iowa 598, reading on page 602, we suggested:

"* * * appellee [mortgagee] was bound to know that the assumption of the indebtedness in the deed was not conclusive, but was subject to explanation and to any defense existing in favor of appellant against the prior parties with whom he had dealt."

For a similar authority, see *Peters v. Goodrich,* 192 Iowa 790. Later, in *Nissen v. Sabin,* 202 Iowa 1362, we recognized the principle announced in previous cases, and continued with this language:

"It is a well settled doctrine, frequently applied to such contracts [for the assumption of a mortgage indebtedness through language in a deed] as the one in question, that the rule that the terms of a written contract cannot be altered or contradicted by parol evidence cannot be invoked either by or against a stranger to the contract; that it has 'no application in controversies between a party to the instrument on the one hand and a stranger to it on the other; for the stranger, not having assented to the contract, is not bound by it, and is therefore at liberty, when his rights are concerned, to show that the written instrument does not express the full or true character of the transaction. And where the stranger to the instrument is thus free to vary or contradict it by parol evidence, his adversary, although a party to it, must be equally free to do so.' "

Afterwards, in *Crane v. Leclere,* 206 Iowa 1270, reading on page 1277, we used the following language:

"The usual consideration for an assumption clause is that the amount of the assumed incumbrance is deducted from the purchase price. If, in such a case, the assuming grantee should fail to pay the assumed incumbrance, whereby the grantor, as debtor, is compelled to pay the same, then such grantor has a right of action against his grantee, to recover the rest of his purchase price. * * * The grantor, therefore, continues as a party in interest in such a case. The right of the holder of the assumed mortgage is derived through the grantor in the deed. We have held also that, as against the mortgagee, the real contract between grantor and grantee may be shown by oral evidence, even though it contradict the writing. *Peters v. Goodrich,* 192 Iowa 790. We have held also that, as between assuming grantee and the holder of a mortgage, a reformation of the contract is not essential to the defense, where the oral evidence contradicts the writing. *Nissen v. Sabin,* 202 Iowa 1362. The reason for this holding is that, inasmuch as oral evidence in such a case is admissible without reformation, the necessity for reformation is thereby eliminated."

Enough has been quoted from the decisions of this court to demonstrate that the mortgagee has no rights under the assumption clause in a deed which are superior to the equities of the assumer unless made so by estoppel or some other principle not present in the case at bar. The mortgagee is not an innocent purchaser, so far as the assumption clause in the deed is concerned. Defenses growing out of the same transaction may be asserted by the assumer against the mortgagor who gave the deed, and because of the principle just discussed, such defenses likewise can be interposed against the mortgagee.

Therefore, we are constrained to hold that appellant had a right to plead his defense against Musgrove, to prevent appellee's recovery in the case at bar.

Wherefore, the district court erred in sustaining appellee's motion to strike appellant's answer, and its judgment and decree should be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.