## IN RE ESTATE OF WILL ERNEST BROWNING.
## E. R. BROWNING AND OTHERS v. A. M. EIKEN.[1]

June 30, 1933.

No. 29,450.

[1]Reported in 249 N. W. 573.

L. L. *Duxbury* and L. L. *Roerkohl,* for appellant.

*Brown, Somsen & Sawyer,* for respondents E. R. Browning as guardian of Dorothy Jane Browning, Homewood Sanitarium, First National Bank of Winona, and Sprague State Bank of Caledonia.

*Lees & Bunge,* for respondent Selma Browning.

*OLSEN, Justice.*

The appellant, A. M. Eiken, administrator of the estate of Dr. W. E. Browning, appeals from a judgment of the district court, on appeal from the probate court by certain creditors of the estate and by Dorothy Jane Browning, by her guardian. Selma Browning, the surviving spouse of the deceased, appeared in the district court and here as a respondent. The appeal of Dorothy Jane Browning, by her guardian, was withdrawn in district court.

The appeal presents the question of whether the trial court erred in its findings and judgment in adjudging that the order of the probate court allowing the partial account of A. M. Eiken, as administrator of the estate, be reversed in part. It was not a final account. The situation, as presented to the probate and district courts, may be briefly stated as follows:

W. E. Browning died May 6, 1929. At the time of his death he had on deposit subject to check in the State Bank of Caledonia the sum of $3,737.25. He owed the bank on two promissory notes, one for $2,000 due May 10, 1929, and one for $600 due December 6, 1929. Appellant was appointed special administrator of the estate on May 14, 1929, and as general administrator on June 29, 1929. During all the times here in question the appellant was also the cashier and chief executive of the State Bank of Caledonia, herein referred to as the bank. On May 17, 1929, appellant, acting as cashier of the bank, charged to the account of Browning the sum of $600 in payment of the $600 note, and on June 29, 1929, he in like manner charged to the Browning account $2,060 in payment

378

of the principal and $60 interest on the $2,000 note, and then credited himself, as administrator of the estate, and charged the account with $1,077.25, thereby closing the Browning account. The $600 note was dated April 30, 1929; the $2,000 note was dated November 10, 1928. The $2,000 note has attached to it a contract whereby W. E. Browning, the maker thereof, in consideration of the loan of $2,000, transferred to the bank certain bonds, known as the hospital bonds, of the face value of $2,000, as collateral security to the note and all other debts then or thereafter contracted or incurred by him to the bank. Said contract provides that in case said note or any such other debt or liability is not paid at maturity the bank is authorized to sell the collateral security and apply the proceeds to his indebtedness. It further provides that the bank is also authorized "at any time, in its discretion, to apply any money or other property of any kind, which it may have or hold, on deposit or otherwise for said undersigned, towards the payment of said note and such other debts and liabilities, whether due or not." The hospital bonds above referred to were personal obligations of W. E. Browning, secured by a trust deed upon a hospital site and building in Caledonia, Minnesota. They were due November 10, 1928, but had not been paid, except as to interest. The bonds held by the bank were surrendered to the appellant, as administrator of the estate, when the $2,000 note was offset against Browning's bank account. The claim of the State Bank of Caledonia on the two notes before described was not filed as a claim against the estate in the probate court.

■ The appellant, as administrator, reported to the probate court that decedent's account in the bank, coming into his hands, amounted to $1,077.25, being the amount remaining after payment of the notes held by the bank, as above stated. There was a hearing in that court upon the account, and this and other items in the account were contested. The claim was presented that the administrator should be charged with the entire deposit account of $3,737.25, instead of only the balance of $1,077.25. The probate court, with all the facts before it, allowed the account as presented. All the parties appeared before the probate court.

Under 2 Mason Minn. St. 1927, § 8831, the administrator may pay secured claims, not filed for allowance, when authorized so to do by order of the probate court and found to be for the best interest of the estate. That it was for the best interest of the estate promptly to pay these notes so as to stop the interest thereon seems apparent. What the probate court could have done, on application, in the first instance, we think it could do by subsequent order ratifying the acts of the administrator. It could, at the time of the hearing on the account, have made an order directing the payment of these notes. In effect it did so by approving what the administrator had done. The time for filing claims had expired at the time the probate court allowed the administrator's account. But the bank's secured claim could be ordered paid under this statute without being filed, and the statute does not limit the time within which the administrator may obtain an order to pay secured debts.

■ The trial court made no reference in its findings to the agreement attached to the $2,000 note. What was the effect of the provisions in that agreement giving the bank the right, in its discretion, at any time, to apply any money or property held by it for Dr. Browning on his indebtedness to the bank, whether due or not? A reading of the entire agreement leads to the conclusion that it was given as security for his indebtedness to the bank, and such security included his deposit account.

■ The right of set-off or application of securities held for the payment of a depositor's indebtedness to a bank exists against the administrator of the debtor's estate. 3 R. C. L. p. 593, § 221; Little's Admr. v. City Nat. Bank, 115 Ky. 629, 74 S. W. 699, 103 A. S. R. 349; Notes to 19 Am. D. 421, and to 111 A. S. R. 422; Smyth v. George W. Bates & Co. 112 Or. 160, 229 P. 931, 37 A. L. R. 473; Laighton v. Brookline Tr. Co. 225 Mass. 458, 114 N. E. 671, L. R. A. 1917C, 129. An agreement that all collateral or property which may at any time be held by a bank or be in its possession may be treated as collateral to any indebtedness owing to the bank justifies the bank to apply the debtor's deposit account upon his indebtedness, as against the administrator of the debtor's estate.

Fisher v. Continental Nat. Bank (C. C. A.) 64 F. 707. The deposit account of Dr. Browning being at the time of his death pledged to the payment of his notes, his death did not terminate or invalidate the agreement.

■ The general rule is that a creditor holding securities has the option, after the debtor's death, to enforce his securities for payment of his claim or to file his claim as a general creditor of the estate. 24 C. J. p. 276, § 876, and cases cited in note 57.

■ A debtor to the estate who has a set-off against his indebtedness, which set-off he fails to file as a claim against the estate, may nevertheless plead and prove such set-off in reduction of his indebtedness in a suit by the administrator against him to recover what he owes the estate. Gerdtzen v. Cockrell, 52 Minn. 501, 55 N. W. 58; Talty v. Torling, 79 Minn. 386, 82 N. W. 632; Martin County Nat. Bank v. Bird, 92 Minn. 110, 99 N. W. 780.

■ A secured creditor, who desires to share with unsecured creditors for any amount of his claim in excess of what he can realize on his securities, must file his claim as a general creditor. If he holds securities from which he can realize the full amount of his claim or more, he need not file his claim, but can apply his securities to the payment of his claim and turn over to the administrator any excess of money or securities remaining.

■ The probate court has no general equity powers. But when a case is appealed to the district court it is there tried *de novo* the same as if commenced in that court, and that court has and exercises equity powers and jurisdiction. A court of equity has inherent power to allow or compel a set-off when it is necessary to promote justice, and there is no violation of any statute or established rule of law in so doing. One of the reasons for allowing a set-off is to prevent multiplicity of suits and circuity of actions. Martin County Nat. Bank v. Bird, 92 Minn. 110, 99 N. W. 780; Adams v. Grundy & Co. Inc. 256 Mass. 246, 152 N. E. 379; Johnston v. Grimm, 209 Iowa, 1050, 229 N. W. 716; Spear v. Dey, 5 Wis. 193; Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. ed. 1059; Pond v. Harwood, 139 N. Y. 111, 34 N. E. 768; Munger v. Albany

City Nat. Bank, 85 N. Y. 580; Pearson v. Richards, 106 Or. 78, 211 P. 167; 57 C. J. p. 361, § 4; 57 C. J. p. 363, § 7, and notes 63 and 64. An agreement for a set-off is one of the grounds for allowing it in equity.

The court found this estate solvent. All claims will be paid in full. The respondents, other than Selma Browning, are creditors only and have no cause for complaint. Selma Browning has no just cause to complain because of the fact that a valid and unquestioned indebtedness against the estate has been discharged. If the judgment as entered stands, the administrator can yet sue the bank to recover the fund applied by it upon the notes, and the bank can then plead and prove its security and set-off, resulting in circuity of actions, expense to the estate, and further delay in closing it. As far as appears, no statutory or other law will be violated by permitting the probate court's order to stand.

The case of Estate of Boyd v. Thomas, 162 Minn. 63, 202 N. W. 60, was one where an executor had paid interest and made payment on secured claims without order of the probate court and without the creditors having exhausted their securities. The probate court properly disallowed such payments.

■ Points urged in respondents' brief and argument, not already specially considered, for sustaining the judgment may briefly be referred to. It is urged that the notes held by the bank were not due at the time Dr. Browning died, and that the $600 note was not due when the bank charged it against his deposit account. The bank could have waited until the due date of the $600 note before making the set-off thereon. The only result would have been additional interest owing thereon.

There is a claim that because the administrator was also the cashier of the bank he in some manner is chargeable with misconduct in the transactions. The trial court did not find any misconduct or bad faith.

On June 26, 1929, the bank on its books charged the Browning account $3,137.25, the amount remaining after charging the $600 note to the account, and on the same day credited $3,175.25 to the

administrator. The court found that the bookkeeping transaction on that date was an inadvertence and mistake, not intended, and was corrected by restoring the credit to the Browning account and removing it from the administrator's three days thereafter. There was nothing in this whereon to base any claim by either party. No money came into the hands of the administrator by the error in bookkeeping.

A reading of the case of May v. Henderson, 268 U. S. 111, 45 S. Ct. 456, 69 L. ed. 870, shows that it has no application here.

It is urged that the administrator had no right to make payment of these notes to the bank. He made no such payment. The bank, acting by its cashier, applied the deposit account to these notes. The cashier happened to be the administrator of this estate. If the bank had the right to make such application, as we have attempted to show, the fact that its cashier, who acted for it, was the administrator, does not affect the transaction. No wrong was done by either.

The point that the bank's claim must, under our statutes, be filed and presented to the probate court within the time limited for such presentation has already been considered.

It is argued that, as the bank's claim was secured by sufficient collateral, there could be no set-off. That is but another way of saying that a secured creditor must first exhaust his securities before he is entitled to a set-off. Here the bank did no more than apply part of its securities in payment of the notes. The fact that it held more securities, which it then turned back to the administrator, did not invalidate its action.

The cases of Corn Exch. Nat. Bank v. Locher (C. C. A.) 151 F. 764, and Eastern M. & E. Co. v. Eastern M. & E. Co. (C. C. A.) 146 F. 761, involve receivership proceedings where the allowance of the set-off would amount to a preference over other creditors. As already stated, we construe the contract between the bank and Dr. Browning to be a pledge of his deposit account to the payment of the notes and not a mere option. No preference resulted.

The judgment appealed from is reversed and the case remanded to the district court with direction to amend its findings, conclu-

sions of law, and judgment so as to affirm the order and judgment of the probate court as respects the portion thereof designated therein as section or paragraph "A."

Reversed and remanded.