KAMPS & SACKSTEDER DRUG COMPANY, Appellant, vs. UNITED DRUG COMPANY, Respondent.

*November 15—December 5, 1916.*

*Contracts: Executory: Termination: Bankruptcy of one party.*

1. Where one party to an executory contract repudiates it, or puts it out of his power to perform it, the other party may at his option treat it as terminated at once.
2. The involuntary bankruptcy of a party being the result of acts or omissions of the bankrupt and regarded in the law as the equivalent of a voluntary act disabling the bankrupt from performing his executory business contracts, the other party thereto may at once treat such contracts as terminated.
3. The fact that in such a case the other party to an executory contract shared in a dividend or joined in a composition proceed-

ing did not interfere with his right to treat the contract as ter-
minated.

4. A notification in such case that the contract (which was one of
agency) would not be revived or continued in force until the ac-
count of the agent was entirely adjusted, amounted to an un-
equivocal declaration that the contract was terminated.

APPEAL from a judgment of the circuit court for Waupaca
county: BYRON B. PARK, Circuit Judge. *Affirmed.*

Action for damages for breach of a written contract to sup-
ply the plaintiff with proprietary remedies, toilet prepara-
tions, etc., known as the "Rexall" products. The refusal
was admitted, and the court on the trial submitted to the
jury a single question as to the amount of the damage sus-
tained by the plaintiff, which question was answered by the
jury, but the court afterwards granted defendant's motion
for judgment on the uncontradicted evidence, and the plaint-
iff appeals.

The facts appearing without dispute were as follows:
Plaintiff is a domestic corporation carrying on a retail drug
business at Appleton. The defendant is a Massachusetts
corporation doing business at Boston and making and vend-
ing large quantities of proprietary remedies, toilet prepara-
tions, and miscellaneous articles usually kept in drug stores,
under the name "Rexall" products, which are extensively ad-
vertised and widely sold. The defendant will only allow
one firm in each city to handle its output, such store being
known as the "Rexall" store. In July, 1904, in considera-
tion of the plaintiff's purchase of four shares of the pre-
ferred stock of the defendant at $50 each, the parties en-
tered into a written contract by which it was agreed (1) that
defendant appointed the plaintiff its agent at Appleton and
agreed not to sell its products to any other dealer there so
long as the plaintiff performed the terms of the agreement;
(2) that the plaintiff would uphold the prices set by the de-
fendant for the goods and not sell them to any one except at

full retail prices; (3) that the plaintiff would confine its sales to its own retail store and its own customers, and in case of violation of either the second or third provision would pay $100 liquidated damages for each violation; (4) that the agreement should remain in force as long as plaintiff continued to hold stock in the defendant corporation. There were certain other provisions of the contract which have no bearing on the present controversy and need not be stated. This contract was carried out by both parties until the year 1913. On July 28th of that year the plaintiff was adjudged a bankrupt on petition of four of its creditors (not including the defendant). It then owed the defendant $603.50 on open account. In September following plaintiff's creditors accepted a composition settlement of twenty-five cents on the dollar, and the bankruptcy proceedings were dismissed and the store reopened. The defendant received its share, viz. $150.88, upon this settlement. October 1st following the plaintiff ordered a quantity of "Rexall" goods, and the defendant declined to deliver them, stating in substance that it was a rule of the house, when a loss had been suffered on any account, the agency would not be reopened nor any shipments made until the account had been entirely adjusted.

*Francis S. Bradford,* for the appellant.

For the respondent there was a brief by *Greene, Fairchild, North, Parker & McGillan,* and oral argument by *John W. Gauerke.*

WINSLOW, C. J. In this case it is held:

1. Where one party to an executory contract repudiates it, or puts it out of his power to perform it, the other party may at his option treat it as terminated at once. *Merrick v. Northwestern Nat. L. Ins. Co.* 124 Wis. 221, 102 N. W. 593; *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920.

2. The involuntary bankruptcy of a party disables·him from performing his executory business contracts and is regarded in the law as the equivalent of a voluntary act, inasmuch as it is the result of acts or omissions of the bankrupt himself; hence it follows that such contracts may at once be treated by the other party as terminated. *Central T. Co. v. Chicago A. Asso.* 240 U. S. 581, 36 Sup. Ct. 412.

3. Sharing in a dividend or joining in a composition proceeding does not interfere with this right.

4. In the present case it appears, that the defendant at once notified the plaintiff that the agency would not be reopened except upon compliance with certain conditions and this amounts to an unequivocal declaration that the contract was terminated.

*By the Court.*—Judgment affirmed.