BENJ. J. CHECKEWAY *vs.* PEJEPSCOT PAPER COMPANY.

Sagadahoc.     Opinion May 11, 1929.

164

*George W. Heselton,*
*Edward W. Bridgham,* for plaintiff.
*Robinson & Richardson,*
*Harris W. Isaacson,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, STURGIS, BARNES, BASSETT, PATTANGALL, JJ.

WILSON, C. J.    An action to recover on an order payable to the plaintiff and accepted by the defendant company.

On November 11, 1926, the defendant company contracted with Watson, Frye Company of Bath, Maine, for the manufacture of one four pocket grinder, so-called, for grinding pulpwood in the proc-

ess of manufacturing paper, under a written order containing specifications and numbered 82728.

Prior to the receipt of the order, the Watson, Frye Company had purchased of the plaintiff certain material suitable to be used in the manufacture of machines of this type. Without going into all the details of the negotiations between the plaintiff and a representative of the Watson, Frye Company, the purchase price of the material, or a note or check given in payment therefor, was not paid in due time and suit was brought, and some of the materials, at least, purchased of the plaintiff, and then in the possession of the Watson, Frye Company, were attached.

In order to have the materials released from the attachment, which were necessary for the completion of the grinder by the Watson, Frye Company, the Watson Frye Company gave the following order on the defendant company:

Dec. 2, 1926

Pejepscot Paper Co.
Brunswick, Me.

Gentlemen:

Kindly pay to the order of Benjamin J. Checkeway, Newburyport, Mass., one thousand eight hundred forty-two dollars ($1,842.00) and charge to the account of the Watson, Frye Company against your order 82728.

This assignment is payable upon delivery of grinder in satisfactory operating condition and at the time payment for the grinder is due.

Watson, Frye Company<br>by T. B. Oldham, <em>Treas.</em>

Accepted, Pejepscot Paper Co.
A. B. Johnson, Purchasing Agent
December 2, 1926

Within a few days after the acceptance of the above order, the Watson, Frye Co. was petitioned into bankruptcy by its creditors. Possession of its plant was taken by certain stockholders of the company as second mortgagees, and who either at that time were doing business as partners under the name and style of Corner Brook Foundry and Machine Co. or then formed a co-partnership under that name and took over the plant, and carried on the busi-

ness of a foundry and machine shop and continued to occupy the premises formerly occupied by the Watson, Frye Co. under some arrangement with the first mortgagee.

Upon learning on December 8, 1926, that the mortgagees had taken possession of the plant and had foreclosed, and probably of the bankruptcy of the Watson, Frye Co., and that the plant was being operated by the Corner Brook Foundry and Machine Co., which hereafter for brevity will be referred to as the Corner Brook Co., the defendant company on December 10, 1926, wrote the Watson, Frye Co. the following letter:

Watson, Frye Co.
Bath, Maine
Gentlemen:      Re order 82728.

Please cancel the above order calling for one four pocket grinder for grinding two foot wood.

Pejepscot Paper Co.

and on the same or the following day sent to the Corner Brook Co. an order numbered 83224, of the same tenor as the order given the Watson, Frye Co. on November 11, 1926, for the manufacture of a four pocket grinder.

Prior to the bankruptcy of the Watson, Frye Co. it had completed certain minor parts of the grinder. By arrangement with the trustee in bankruptcy the Corner Brook Co. acquired these parts, paying to the trustee therefor approximately $285.00. If it affects the rights of the parties to this action, it does not appear from the evidence whether any of the materials released from the plaintiff's attachment in his action against the Watson, Frye Co. upon the acceptance of the order by the defendant entered into the grinder constructed by the Corner Brook Co.

The machine was completed by the Corner Brook Co. and delivered to the defendant company on February 2, 1926. The defendant company has paid to the Corner Brook Co. the agreed price for manufacturing the grinder of $3,450.00, except a balance of $200.00.

On May 21, 1927, the plaintiff made demand on the defendant for the payment of his order dated December 2, 1926, and on payment being refused brought this action based on the order.

At the close of the testimony, the defendant moved for a directed verdict, which was refused, and the case submitted to the jury, which returned a verdict for the plaintiff in the sum of $1,888.97, being, presumably, for the amount of the order and interest to date of the verdict.

The case comes before this court on exceptions to the refusal to direct a verdict for the defendant, and a general motion for a new trial.

The plaintiff contends that the Corner Brook Co. in manufacturing a grinder was merely carrying out the order and contract entered into between the defendant company and the Watson, Frye Co. on November 11, 1926; and further that the order to pay given December 2, 1926, when accepted was an absolute and independent agreement on the part of the defendant to pay "The amount named upon the happening of the conditions specified," viz.: the delivery of the grinder in satisfactory operating condition.

He bases this contention chiefly upon the evidence that one or more of the directors or stockholders of the Watson, Frye Co. were the mortgagees who took over the plant and were the co-partners constituting the Corner Brook Co. and on a letter from the treasurer of the Watson, Frye Co. following the bankruptcy and foreclosure proceedings to the defendant dated December 8, 1926, informing it that mortgagees had taken possession and were going to operate it under the name of the Corner Brook Foundry & Machine Co. and that "They stated that they were going ahead and finish the grinder," and that the order later given by the defendant to the Corner Brook Co. was, except as to its number, an exact duplicate of the one given the Watson, Frye Co. in November and merely authorized the Corner Brook Co. to complete the grinder.

These contentions, however, overlook the legal status of the parties and the proper construction of the order accepted by the defendant. The Watson, Frye Co. was a corporation. It became an involuntary bankrupt and a trustee was appointed, but the trustee never took possession of the plant. He, therefore, could not finish the grinder. He never attempted to do so, or claimed the right to, nor assigned the contract to construct the grinder to either the mortgagees of the plant or the Corner Brook Co. The

directors or stockholders, who were mortgagees, or those constituting the co-partnership Corner Brook Co. were, of course, not the same in law as the corporation.

Under these conditions, the defendant was warranted in cancelling its order to the Watson, Frye Co. If the trustee had retained possession of the plant and had indicated his readiness to complete the grinder, it may be doubtful whether the defendant could have cancelled it without the consent of the trustee until the time expired for its completion; but a bankrupt without a plant is held to have placed himself in a position where he can not perform his executory contracts to manufacture articles, and furnishes sufficient grounds for a recission or cancellation. *Kamps Sacksteder D. Co.* v. *United D. Co.*, 164 Wis., 412; *Central T. Co.* v. *Chicago A. Ass.*, 240 U. S., 581; 13 Cyc., 615; Williston Contracts, Secs. 880, 1987.

The defendant company was, therefore, warranted in cancelling its order of November 11, and placing its order with the co-partnership; and the grinder delivered, while of the same type and built according to the same specifications, was not the grinder ordered of the Watson, Frye Co. In constructing the grinder delivered, the Corner Brook Co. was acting in its own behalf and not instead of and for the benefit of the Watson, Frye Co. or its creditors.

Although the plaintiff was given a mortgage on the grinder by the Watson, Frye Co. when he released his attachment, and he was notified by the defendant ten days before its completion and delivery that the Watson, Frye Co. was not completing the grinder but it was being done by the Corner Brook Co., he made no effort to enforce his rights under his mortgage, as it appears he might have done if Watson, Frye Co. had built it or it was the same grinder described in his mortgage. *Morrill* v. *Noyes*, 56 Me., 458, 467-8; *Perry* v. *Pettingill*, 33 N. H., 433.

However, under a proper construction of the pay order on which this action is based, the defendant did not enter into an absolute and independent agreement to pay when a grinder was delivered in satisfactory operating condition, of the same type and built according to the same specifications contained in the order to Watson, Frye Co. though manufactured in the same plant, but to

pay out of funds to become due to the Watson, Frye Co. upon the fulfillment of the order 82728.

Counsel for the plaintiff relies on certain Massachusetts cases: *Cook* v. *Wolfendale*, 105 Mass., 401; *Russell* v. *Barry*, 115 Mass., 300; *Robbins* v. *Blodgett*, 124 Mass., 279.

These cases, however, are clearly distinguishable from the case at bar. In the *Cook* v. *Wolfendale* case, the order read: "pay Wm. M. Cook or order $1,200, payable when house is ready for occupancy"; but as that Court points out in *Somers* v. *Thayer*, 115 Mass., 163: "The terms of the order contained no reference to the building contract, but merely fixed the time of payment as the time when the building should be ready for occupancy."

In the *Somers-Thayer* case above cited, however, the order read: "Pay Wm. Somers & Co. or order the sum of $296.00 on completion of the house now building at Randolph by me for you," but it also contained the further important direction "and charge the same to me on account of contract."

There is no difference in legal effect between the order in the instant case and that in the *Somers-Thayer* case. The Somers order read to pay when house now being built "by me for you" is completed "and charge to my account." The order accepted by the defendant in the instant case was in effect to pay when the grinder, then being built by the Watson, Frye Co. for the defendant company under its order 82728 was delivered in satisfactory working condition and to charge the amount paid to the amount to become due the Watson, Frye Co. under the order for building the grinder 82728. Indeed, there is even stronger grounds, we think, in the language of the Watson, Frye Co. order for holding it payable for a designated fund when it became due than in the *Somers-Thayer* case.

In *Russell* v. *Barry*, 115 Mass., 300, the order read: "deliver Mr. John McDonald lumber for my house on Codman Street and I'll be responsible for the same when the house is completed." Here, the Court held that the order resembled that in *Cook* v. *Wolfendale*, supra, and that it was not made a condition that the house was to be completed by McDonald, and the Court further says: "The reference to the completion of the house has no effect except to fix the time when the order should be payable."

The order in *Robbins* v. *Blodgett*, supra, was of the same tenor and the Court held it was payable when the house was finished and was not conditioned upon its being finished by the drawer of the order.

In *O'Connell* v. *Mt. Holyoke College*, 174 Mass., 511, however, where the sum to be paid was to be paid from moneys to become due, and in *Morrison* v. *Lamson*, 176 Mass., 536, where the payment was to be from equities in hosiery consigned to the defendant and to be charged to consignor's account, it was held in each case that the payment was intended to be made from a designated fund to become due under a contract between the drawer and acceptor, and the fund failing to materialize there was no liability on the order.

The provision in the order in the case at bar that the payment is to be charged to the account of the Watson, Frye Co. and against the defendant's order 82728 must, therefore, be construed to mean that the payment was to be made only from funds to become due. Watson, Frye Co. under the order specified. This pay order is, we think, susceptible of no other reasonable construction. It was in legal effect a partial assignment of funds to become due under a certain contract. It was evidently so understood by the parties. The order when originally presented to the defendant for acceptance read: "This *order* is payable when grinder is delivered, etc.," but to make clear the intention, it was, at the insistence of the defendant, changed to read: "This *assignment* is payable, etc."

Therefore, regardless of whether the original order was cancelled and a new order given to a new concern, or whether the Corner Brook Co. merely finished a grinder already begun by the Watson, Frye Co., since it is not claimed, and can not be upon the testimony, that it was done for the benefit of the Watson, Frye Co. or its creditors, or was done under any arrangements with it or the trustee in bankruptcy, and since nothing ever became due the Watson, Frye Co. or its trustee in bankruptcy from the defendant under its order 82728, the plaintiff can recover nothing of the defendant in this action.

*Motion and exceptions sustained.*